## David Munn *vs.* Noah Worrall.

A bill, or complaint to impeach a decree, on the ground of newly discovered evidence, cannot be sustained where the newly discovered evidence relates to a matter of which the plaintiff was apprised in season to have enabled him, with the exertion of reasonable diligence, to bring the same before the court, at first.

Fraud cannot be excused, whether practiced upon a court or individuals. And upon principle, a decree procured by fraudulent acts, representations, or concealment, should not stand.

But where a party seeks to impeach a decree, on the ground of fraud, it is not enough for him to show that a fraud has been practiced. If he has, without good cause, allowed the time to pass when it was proper for him to allege and prove the circumstances entitling him to relief; or if those circumstances do not support his present mode of procedure, he cannot succeed.

A party who neglects to make a defense, known to him, at the time when it should be made, or to adduce evidence to substantiate it, of which he was then aware, or which he could have ascertained, with reasonable diligence, and in consequence of such neglect fails in the controversy, cannot subsequently renew it, upon the discovery of additional testimony to substantiate such defense.

Where a party fails, at the proper time, to remember the presence of a witness at an important conversation had in reference to the subject matter of an impending litigation, and a decree passes against him, in consequence of his omission to examine the witness, his forgetfulness will by no means exempt him from the charge of inattention and negligence. And the maxim *vigilantibus non dormientibus leges subveniunt* will be applied to him.

The objection that a party had parted with his interest in the subject matter of a suit, before or pending an appeal brought by him to the court of ap-

peals, will not, except in a palpable case of fraud, authorize the supreme court to set äside the decree made by the appellate court and subsequently made a decree of the supreme court, or to grant a perpetual injunction against its enforcement.

Noah Worrall, on the 11th day of April, 1844, filed his bill of complaint before the vice chancellor of the second circuit, against David M. Prall and David Munn, to obtain the specific performance of a sealed written agreement, under date of November 27th, 1843, for the sale by the defendant Prall, to and purchase by the plaintiff, Worrall, of certain real estate, situated in the town of Haverstraw, Rockland county, and for a conveyance of the interest of the defendant Munn, if any, in the real estate referred to, alleging that he, Munn, with the knowledge or information of the agreement above referred to, had entered into an agreement with Prall, by which the latter had agreed to sell and Munn to purchase the same real estate, in violation of Worrall's right, under his aforesaid agreement with Prall. The defendants Prall and Munn answered separately, and replications were filed. Proofs were taken before an examiner in chancery, and the cause was subsequently heard upon pleadings and proofs before the Hon. Charles H. Ruggles, vice chancellor of the second circuit; who, on the first of March, 1846, made a decree directing a specific performance of the agreement. On the 23d of April, 1846, the defendant, David Munn, appealed to the chancellor, from parts of the decree made by the vice chancellor; which appeal was heard in November, 1848, before the supreme court, at the general term thereof, held in the county of Kings. On the 22d day of November, 1849, the supreme court, by its judgment or decree of that date, reversed the decree made by the vice chancellor, and dismissed the bill of complaint without costs to either party, and without prejudice to any remedy at law, which the plaintiff might have for damages against the defendant David M. Prall, or his representatives, on the contract of the 27th of November, 1843, mentioned in the bill of complaint. From this last judgment or decree the plaintiff appealed to the court of appeals. That court, in July, 1851, reversed the decree of the supreme court, and affirmed the decree

Munn *v.* Worrall.

of the vice chancellor, (*see* 1 *Selden,* 229,) and the decree of the vice chancellor having been made a decree of this court, in pursuance of the remittitur from the court of appeals, the complaint in this suit was filed, for the purpose of impeaching that decree, on the ground of fraud. The plaintiff alleged in his complaint that the decree of the court of appeals, and the decree of the vice chancellor, thereby affirmed, were obtained against him by fraud and corruption and by false and deceptive practices upon said courts. And he specified the said fraud and corruption, and false and deceptive practices, as follows: First. That the lands in Haverstraw in said original bill mentioned, were bargained for by said Henry Worrall; but by a secret understanding or agreement between him and said Noah Worrall, the said Henry Worrall was to have the counterpart of the articles of agreement therefor to be given, executed in the name of said Noah Worrall, while he the said Henry Worrall was nevertheless by said secret agreement and understanding to be and remain the sole beneficial owner and alone beneficially interested therein; thereby concealing and disguising the truth of the transaction, avoiding personal responsibility on the part of said Henry Worrall, and enabling him to be a witness in his own cause and testify as to matters in which he was directly interested, in fraud of law, while the nominal plaintiff in the suit had no beneficial interest whatsoever therein, but suffered his name to be used as plaintiff by the said Henry Worrall, for the deceptive and fraudulent purposes aforesaid. Secondly. That on the 22d day of December, 1843, nearly one month after the alleged execution of the said pretended articles of agreement, the said Henry Worrall and also the said Noah Worrall well knowing that such articles of agreement as were in said original bill alleged had never been executed by the said David M. Prall, or by his authority, but on the contrary, that all negotiation on the subject of the sale of said lands had been carried on by and between the said Henry Worrall and the said David M. Prall, and the bargain made between them as the contracting parties, and that the articles of agreement executed in pursuance of such negotiation and bargain were intended to be and were executed

by and between the said David M. Prall and the said Henry Worrall, and that the execution of the counterpart of said articles of agreement in the said original bill alleged had never been consummated by a delivery, or placed in the hands of the said Henry Worrall for the said Noah Worrall, or in any other way or for any other purpose than by handing them over to the said Henry Worrall to take with him to Haverstraw to show to Horatio G. Prall, esquire, a counsellor at law, who had introduced the said Henry Worrall to the said David M. Prall, and then to be returned unless they were sanctioned by the said David M. Prall, he the said Henry Worrall for the purpose of carrying out the said fraudulent and collusive agreement hereinbefore mentioned and for the same fraudulent and deceptive purpose aforesaid executed to the said Noah Worrall, and he the said Noah Worrall for the like purpose received from the said Henry Worrall, a certain writing under the hand and seal of him the said Henry Worrall whereby Henry Worrall released to Noah Worrall all his interest in or under said contract.    Thirdly. That at the time of filing said original bill the said Noah Worrall had not, nor had he at any time, had any right, title or interest in the said alleged contract or in the said lands thereby contracted to be conveyed, otherwise than upon a secret and concealed trust for the said Henry Worrall.    But on the contrary, the said Henry Worrall was sole owner, and solely interested therein, and with the knowledge and acquiescence of the said Noah Worrall, exercised sole and exclusive dominion and acts of ownership over said lands under and by virtue of the said secret understanding and agreement between him and the said Noah Worrall, and that said Henry Worrall filed said bill or caused it to filed in his, said Noah Worrall's name, and with the knowledge, acquiescence and consent of the said Noah Worrall, in order, among other things, that he the said Henry Worrall might be a witness in the cause to prove the execution and delivery of said contract, which he the said Henry Worrall afterwards did falsely, fraudulently and untruly testify to, as a witness in the cause, he being the only witness who did testify to it, and his testimony being the only evidence thereof.    That notwithstanding there

was testimony on the part of the defendants in the cause, show-
ing that said contract was never delivered as the deed or escrow
of the said David M. Prall, or finally executed by him, yet the
vice chancellor decreed that said contract had been so delivered
and executed; and that he so decreed upon the said interested,
fraudulent, false and untrue testimony of the said Henry Wor-
rall, he then being the party in truth and reality directly inter-
ested, and the only party so interested as plaintiff in said cause,
but deceiving the court and disguising or concealing his interest
by the corrupt and fraudulent means and for the deceptive and
fraudulent purpose aforesaid. Fourthly. That soon after the
said Henry Worrall had been sworn and examined as a witness
and said decree of the vice chancellor had been made, and an
appeal taken therefrom to the chancellor, and long before the
said appeal had been taken from the decree of the supreme court
to the court of appeals, and before the supreme court had decided
upon the appeal thereto from the decree of the vice chancellor,
Noah Worrall, on the 26th day of August, 1846, released,
assigned and conveyed to Henry Worrall, without any consid-
eration whatsoever paid or to be paid therefor, but merely in
pursuance of the original agreement so secretly made between
them, all his right, title and claim in law and equity in and to
said alleged contract, and in said lands, and in said suit upon
the original bill; whereupon and whereby the said Henry Wor-
rall became in form, as at all times he had before been in
substance and reality, the sole and exclusive owner of all
right, title and interest in the said contract, or in the said
lands, by virtue of said contract, so far as said alleged con-
tract had any validity, and was in his lifetime and his rep-
resentatives after his death, were the only person or persons,
party or parties, who could institute said original suit in
equity or prosecute an appeal from said supreme court to the
court of appeals. And the plaintiff further stated that the
said Henry Worrall and Noah Worrall, with intent to defraud
the plaintiff and said David M. Prall, and to enable Henry Wor-
rall to avail himself of the false testimony so as aforesaid given
by him in said suit, concealed the fact that Henry Worrall was

the party for whose immediate benefit said suit was prosecuted and that Noah Worrall was only a nominal party therein; and further, that said Henry Worrall and Noah Worrall, with the like fraudulent intent, concealed the fact of said release, assignment and conveyance made by Noah Worrall to Henry Worrall, on the 26th of August, 1846, and all things relating to the same; and that the relation in which said Noah Worrall and Henry Worrall respectively stood to the suit, was kept concealed from the plaintiff and David M. Prall, and the courts in which said suit was pending, until after the decision in the court of appeals and after this suit had actually been remitted, pursuant to said decision, to the supreme court. And the plaintiff further stated that the said appeal from the judgment of the supreme court was made in the name of Noah Worrall, with knowledge on the part of the person or persons making the same, and of those for whose benefit it was brought and prosecuted, that said Noah Worrall had no interest whatever in said suit or in the decree appealed from, and with intent to prosecute said appeal in fraud of the rights of the plaintiff and said David M. Prall, and contrary to law and the rules and practice of the courts. The plaintiff then alleged that the said Noah Worrall, by his attorney and counsel, was now proceeding to enforce said decree of the vice chancellor so fraudulently obtained, and so fraudulently affirmed by the court of appeals as aforesaid, to the great detriment and irreparable injury of the plaintiff. He thereupon asked for an injunction order pending this action, and demanded the judgment or decree of this court enjoining and restraining the defendant Noah Worrall from all further proceedings for or towards the enforcement of the said decree of the vice chancellor, and for his costs of this action.

The plaintiff now moved for a preliminary injunction, according to the prayer of his complaint. The additional facts in the case, and the grounds upon which the relief was asked for, will sufficiently appear from the report of the case of *Worrall* v. *Munn and Prall*, in the court of appeals, and the following opinion of Justice Strong.

*A. L. Jordan* and *B. F. Butler*, for the plaintiff.

*C. O'Conor* and *W. Fullerton*, for the defendant.

S. B. STRONG, J.   The plaintiff has filed his complaint in this suit to impeach a decree of the late court of chancery, and which was eventually, pursuant to a remittitur from the court of appeals, made a decree of this court, on the ground of fraud. He asks for a perpetual injunction, restraining the defendant, in whose favor the decree had been made in the original suit, from enforcing it, but does not seek to set it aside.   It may be doubted whether he calls for the appropriate remedy; as the object of such a suit is to restore the parties to their former situation, whatever their rights may have been, (*Story's Eq. Pl.* § 426;) whereas a perpetual injunction would forever restrict the defendant from establishing any claim to the land in controversy between the parties, which he might have and prove, notwithstanding such of the charges contained in the complaint as could be in any manner available to the plaintiff in this suit.   But as that question, if it be one, is peculiarly proper for the consideration of the court on the final determination of the action, and was not (probably for that reason) discussed on the argument, I shall not examine it here.

This peculiar action is not of frequent occurrence, and there is not much in the books in reference to the principles applicable to it.   As defined by Judge Story, in his commentaries on *Equity Pleading*, (§ 426,) the proceeding is "an original bill in the nature of a bill of review."   A bill of review, according to the ordinances of Lord Bacon, might have been brought, first, for error in law apparent in the body of the original decree; secondly, upon discovery of new matter; and thirdly, by the special license of the court upon new proof that is come to light after the decree, which could not *possibly* have been used at the time when the decree was made.   The first of these grounds is inapplicable to bills to impeach a decree for fraud, but the other two apply and limit the action; and there is the further restriction that the new matter, or new proof, must be relative

to the main question, as to fraud, involved in the renewed con-
troversy.   According to the rule prescribed by Lord Bacon and
approved by many of his successors, where a bill of review is
brought on the ground of newly discovered proof, it can only be
done by the special license of the court.   The reason is, that
the practice, unless it should be restricted, would be subject to
great abuse.   Accordingly, it has been decided that such bill
cannot be sustained on this ground where the newly discovered
evidence relates to a matter of which the plaintiff was apprised
in season to have enabled him, with the exertion of reasonable
diligence, to bring the same at first before the court.   ( *Young*
v. *Keighly*, 16 *Ves.* 348.)   Chancellor Kent, in *Livingston* v.
*Hubbs*, (3 *John. Ch. Rep.* 124,) decided that a bill of review
could not be sustained on the ground of newly discovered evi-
dence which would go to impeach the character of a witness
previously examined, or which would be cumulative as to a
fact which had been litigated, *or which might have been dis-
covered by the party complaining, had he used due diligence.*
These restrictions, and the reasons for them, are, I think, equally
applicable to complaints to impeach a decree on the ground of
fraud.

Fraud cannot, of course, be excused, whether practiced upon
a court or individuals.   Upon principle, a decree procured by
fraudulent acts, representations or concealment, should not stand;
and if a court could act *ex mero motu*, it should, when the fact
should be duly established, at once erase the obnoxious pro-
ceeding from its records.   But in all cases between parties
litigant the question is whether the *plaintiff* is entitled to the
redress for which he asks, not whether the defendant may have
committed *some* wrong.   Plaintiffs must seek the appropriate
remedy, and pursue the requisite means to obtain it, or they
cannot succeed, however grievously they may have been injured.
It is not enough, therefore, for the plaintiff in this suit to show
that a fraud has been practiced which has been injurious to him,
to entitle him to the relief which he solicits.   He must fail if
he has let the time pass when it was proper for him to allege
and prove the circumstances upon which he now relies ; or if

those circumstances do not support his present mode of proce-dure. These are familiar principles, founded on wise and neces-sary considerations, and should be strictly applied.

The first and principal charge in the complaint is that the present defendant and his father Henry Worrall *concealed* the alleged facts that Henry Worrall was the actual, while the de-fendant was the mere nominal, purchaser of the land in dispute, and that, while the defendant here was the nominal plaintiff in the original suit, such suit was instituted for the benefit of Henry Worrall, and that thereby he was enabled to be, and was a material witness for the plaintiff in that suit, and that his testimony was mainly instrumental in procuring the decree. It is not averred in the complaint that the plaintiff in this suit was, at the time when the original suit was instituted, or when Henry Worrall was examined as a witness, ignorant of the alleged fact that Henry Worrall was the actual purchaser, or that such suit was instituted for his benefit, or that the now plaintiff was then unacquainted with, or has since discovered, any witnesses to prove such allegations. Concealment by one who has, or may be supposed to have had, the exclusive means of knowledge, may, however, well imply ignorance in another, and I shall for the present consider the allegation in that way, although it would have been more satisfactory if the want of the information, from any source, could have been directly ex-pressed. It is apparent that the plaintiff had, previous to the institution of the original suit, been informed that Henry Wor-rall had been the active negotiator in the purchase of the land in dispute, and had substituted the name of Noah Worrall as the purchaser, in the articles of agreement. It was so stated in the agreement between Prall and Munn which was executed by them. Munn also states, in his affidavit, that he at all times believed that Noah Worrall had no interest in the contract which was the basis of the original suit, but that on the con-trary he, either by an express or an implied understanding with Henry Worrall, held such contract in trust for the said Henry Worrall.

It is set forth in the affidavit of Edward J. Strang, who is

the son-in-law of Munn, a resident of the same place, and a brother of one of his counsel who was present at the examination of Henry Worrall, that in the summer preceding such examination Strang called on Noah Worrall and inquired of him whether an arrangement between him and Munn could not be made, and the suit and controversy between them terminated, and that Noah Worrall answered that he had nothing to say or do about it, and that the deponent must go to Henry Worrall. It is not stated that the inquiry was made at the request of Munn, or that the answer was communicated to him, but from the connection subsisting between him and this witness and the object of the proposed negotiation it is reasonable to infer both. Strang also states that shortly after this conversation was had, and before any testimony had been taken in the original suit, *he* was present at an interview between *Henry Worrall, Noah Worrall* and *Munn*, when there was a negotiation between Henry Worrall and Munn in reference to the damage done by the latter to the premises, after his purchase. That Henry Worrall then claimed that such damages should be allowed to *him*, and proposed that *he* should release such damages, and that Munn should release all his right and claim to such premises to the said Henry Worrall; that this negotiation was carried on by Henry Worrall in his own name, and on his own behalf, as the owner of the said premises, and as entitled to remuneration for the damages done thereto by Munn, without reference to any right, title or interest of Noah Worrall therein; and that Noah Worrall, who heard the conversation, acquiesced in the right of his father to the land and damages, "by remaining entirely silent on the subject." Henry Beebe also states, in his affidavit, presented by the present plaintiff, that in the spring or summer preceding the examination of the witnesses, he heard Noah Worrall say that his father had purchased the land, and was about to build upon it, and prepare it for the brick-making business, and that within two months afterwards this deponent was informed by Henry Worrall that he had purchased the premises, and was going on to erect buildings there, for the brick-making business; and that he intended to

build a house upon such premises, for a residence for himself and wife. It is not stated that these conversations were at the time communicated to Munn; but Beebe was a resident of the same place, and the suit was then pending and no doubt known to him. It is reasonable to infer that some communication on the subject was made at the time, but the inference is too slight to influence judicial action.

If Munn supposed, or was advised, that the objection that Henry Worrall was the actual purchaser of the premises sold nominally, to Noah Worrall, would prove fatal to the original suit, and had information sufficient to justify his belief previously to, or at the time of filing his answer, he should have specially averred his information and belief, and relied upon the defense in that pleading. If he had no reliable information upon the subject until his negotiation with Henry Worrall, mentioned in the affidavit of Strang, he should then have applied for, and would no doubt have obtained, permission to file an amended or a supplemental answer, setting forth the newly discovered grounds of his defense; or if it was unnecessary for him to set forth such defense in his pleading, he should have made exertions to procure additional proof, and at any rate have adduced that which was known to him when the testimony was taken. A party who neglects to make a defense, known to him, at the time when it should be made, or to adduce evidence to substantiate it, of which he was then aware, or which he could have ascertained, with reasonable diligence, and in consequence of such neglect fails in the controversy, cannot subsequently renew it, upon the discovery of additional testimony to substantiate such defense. There may be cases in which a renewal of the controversy might, under such circumstances, subserve the cause of justice; but the number could not be considerable. If the door should be opened to let in such cases it would be difficult to close it. The practice would necessarily become general, and would be productive of intolerable abuse.

If Munn, instead of interposing the objection founded upon the supposed interest of Henry Worrall in the subject matter in dispute as an absolute defense to the suit, was advised or con-

cluded to use it simply to exclude the testimony of Henry Worrall, he was bound to prove and urge it at the time when that testimony was offered or adduced. Confessedly he knew of the existence of the objection at the time, and had known of a witness by whom, as is now alleged in his behalf, the objection could have been proved. It is true that he states in his affidavit that he was not aware (meaning, no doubt, at the time when the testimony was taken,) that Strang was present at the interview between him and the two Worralls ; and Strang says that he did not mention the fact of his being present at such interview, to Munn, until recently, and long after the decree in the original suit. Neither of them says that Strang's presence was unobserved by Munn, at the time, and certainly a circumstance so unusual and strange is not to be inferred. Munn, no doubt, was aware of it then, and, although what took place was very material to his defense in a controversy then pending, and which he was endeavoring to settle, he may have forgotten it precisely at the time when it should have been remembered. His forgetfulness may have been the cause of the omission, but it by no means exempts him from the charge of inattention and negligence. He must still be subjected to the application of the familiar maxim that *vigilantibus non dormientibus leges subveniunt.* In the case of *Floyd* v. *Jayne*, (6 *John. Ch. R.* 479,) where an attempt was made to upset a judgment of a court of common pleas (which court was incompetent to grant a new trial,) on the ground of subsequently discovered evidence to prove a new defense, it appeared that one witness had previously told the plaintiff (in the chancery suit) that he could have been of some service, and another had been present when the plaintiff in the common pleas had admitted to the defendant in that court the facts which would have established the proposed new defense, but it was apparent that the original defendant had forgotten these circumstances. The chancellor said that " he should have recollected that this [the last] witness was present. Due inquiry would probably have brought that conversation to his memory ; but it does not appear that he made any inquiry. This appears to me upon the whole to be a very strong case of negligence before the

Munn *v.* Worrall.

trial; and there is no account of any effort or inquiry whatsoever, made by the plaintiff, pending the suit at law, to enable him to set up and support a plea of payment." The chancellor refused to interpose in that case, although he was satisfied that the original claim which had been recovered in the common pleas had been paid, and the plaintiff there, who had acted as a confidential friend of the defendant, had fraudulently violated his trust; because the defendant had been guilty of negligence.

Several of the persons who made the affidavits presented in behalf of Munn, state conversations with Henry Worrall in which he claimed the land in controversy as his own. Some of these conversations were had before, and others after, the examination of Henry Worrall, and were communicated to Munn after the decree in the original suit. As Noah Worrall was not present when the alleged declarations of Henry Worrall were made, and the latter was not, at the times when the conversations were had, acting as the agent of the former, such declarations are not competent evidence against Noah Worrall. They can be considered now only as they might lead to, or show, the propriety of the exclusion or discredit of the testimony of an important witness in his behalf. So far as they would go, in reference to the testimony of Henry Worrall, they would be merely cumulative to what Munn might, but for his own forgetfulness and negligence, have adduced when the testimony was taken in the original suit. They are objectionable too not only because they consist of the recollections of conversations upon which but little reliance is usually placed, but the conversations were had in the absence of the party whose interests are to be affected. The will of Henry Worrall is more reliable, but it has only a remote bearing upon the allegation that he was *originally* interested in the purchase of the premises, and so far as it goes, as to that it is merely cumulative.

It appears to me then that Munn was remiss in not recollecting the presence of his son-in-law, Strang, at an important conversation in reference to the subject matter of an impending and serious litigation; in not making any exertions to procure information on a subject which would seem, from the depositions pro-

duced by him, to have been a matter of public notoriety among his friends and neighbors; and also in not instructing his counsel (whose ability to elicit information from a reluctant witness is proverbial) to question the witness upon this point when he was repeatedly and at distant intervals placed upon the stand.

When an objection to the credibility or competency of a witness is known, it should be urged at the time of his examination. If he should be interested his interest might, in most cases, be released and the witness then examined. If bias should be alleged, the witness might state facts which would disprove it, or show that it could have no influence over his testimony. But if the objection to a witness is not insisted on at the examination, and the party against whose interests he testifies is allowed to renew the controversy, after a decision has been pronounced against him, (and particularly, as in this case, after the death of the witness,) he may inflict great injustice upon his opponent by depriving him of the testimony of perhaps an absolutely necessary witness, whose competency might have been established, had the objection been raised in due season, or discrediting evidence for colorable objections which might have been satisfactorily explained. Thus one party would gain by his own neglect, while the other might suffer for a fault attributable solely to his opponent.

If there was an understanding between the two Worralls, at the time when the articles of agreement between Noah Worrall and Prall were executed, that Henry Worrall was to be beneficially interested in the land in question, there is no evidence from which an inference can be legitimately raised that it was reduced to writing so as to make it legally available to Henry Worrall. Neither is there any thing from which it can be inferred that the intended interest of Henry Worrall was fraudulently concealed, or concealed at all, by him, or the present defendant. From the depositions read in behalf of the now plaintiff Munn, it appears that it was disclosed by Henry Worrall in several conversations with William S. Holmes; by Noah Worrall to Henry Beebe in April, 1844; by Mary Worrall to the same person, within one month afterwards, and again in the summer of the same year; by both of the Worralls to Munn himself, in the

presence of Edward J. Strang in the summer or early in the fall of 1844, and by Noah Worrall to Strang in the summer of the same year; by Henry Worrall to Lewis R. McKay within three or four weeks after the articles of agreement had been executed; by Henry Worrall in repeated conversations with Lewis Constant, the next season after the purchase was made, in which he spoke of the land as his, and conversed freely and openly of the uses to which he intended to devote it; by Henry Worrall to William H. Robinson, in the autumn of 1843; to Lewis W. Young in the same autumn; to George Wesart before the latter had heard of the purchase, from any other person; and to D. B. Gardner in 1843 or 1844. It seems to me that these open, frank declarations, made to Munn himself, to his son-in-law, to several of his near neighbors, and to others, at various times from almost immediately after the purchase until the examination of Henry Worrall, effectually disprove the charge that his interest, actual or intended, was fraudulently concealed from Munn, or at all, for the purpose of enabling him to be a witness in the original suit.

The alleged ground for impeaching the decree first pronounced in the original suit is not only destitute of proof to support it, but is positively disproved.

The other ground on which it is sought to impeach the decree is founded on the allegation that Noah Worrall had, previously to his appeal to the court of dernier resort, conveyed his interest in the land in dispute to Henry Worrall, and that being no longer interested in the controversy he could not effectually prosecute the appeal.

The appeal by Noah Worrall was from a decree rendered against him in the supreme court, reversing the decree in his favor, made by the vice chancellor. By the revised statutes such appeal could be brought only by the party against whom the decree was made, during his lifetime, except in the cases of reversioners and remaindermen on the recovery of lands in suits against tenants for life or years. (2 R. S. 501, § 2. Id. 605, § 78.) The code extends the right to any party aggrieved. (§ 325.) It nowhere says, however, and it would be difficult to

prove, that a person against whom a wrongful decree has been made is not a party aggrieved. Even if he should have parted with the subject matter in controversy he may, and generally does, have some interest in his own costs, or as to the costs of his opponent.

But I think that this objection is unavailable to the present plaintiff, on the substantial ground that the plaintiff in the original suit was actually interested in the subject matter of that suit, up to the time when the decree was finally entered, in the supreme court. It appears from the affidavit of Noah Worrall and Richard Busteed that the deed from Noah Worrall to Henry Worrall was not designed to be an absolute conveyance, and that it was not delivered to the grantee by the grantor, nor with his consent, but through a mistake. Besides, if it had been designed as a present conveyance, and was fully and fairly delivered, it would not have proved any title or interest, as the grantor was not in possession of the land now in controversy, and it was then the subject of litigation in one of our courts. (2 R. S. 691, § 5.) As the objection to the prosecution of the appeal by the present defendant is, under the circumstances, purely technical, and the party making it was in no manner prejudiced by the procedure, there is no reason why it should prevail, against the strict legal rights of the parties.

There is no evidence of any fraudulent design in what was done towards the proposed conveyance of the property by Noah Worrall to Henry Worrall, or to show that the transactions relative to it were designedly concealed from any one; and fraud should never be lightly inferred. The objection that the defendant here had parted with his interest, before or pending the appeal in the original suit, would not, except in a palpable case of fraud, authorize the court to set aside this decree, or to grant a perpetual injunction against its enforcement.

I do not see any sufficient reason for granting the preliminary injunction asked for by the plaintiff, and it is accordingly denied, with ten dollars costs.

[KINGS SPECIAL TERM, February 21, 1853. S. B. Strong, Justice.]