# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## MANION *v.* FAHY.

### Decided November 1, 1877.

1877.
Special Term.

1. A clerical error in entering a consent decree may be corrected by the original draft of the decree, furnished the clerk by the court, on motion at any time, under the provisions of section 5 of chapter 134 of the Code.

2. A consent decree, except where such clerical error has occurred, can never be modified or altered without the consent of parties, not even during the term at which it was entered.

3. A consent decree may be set aside during the term at which it was entered, on motion, or by the court without any motion.

4. After the termination of the term at which a consent decree was entered, it can never be set aside, except by consent, by any proceedings in the cause, though it had been entered by mistake, or by the fraud of one of the parties.

5. A consent decree may be annulled when it was procured by fraud or was entered, by mistake of one or both of the parties, differently from what it should have been on an original bill filed for the purpose.

6. An original bill is necessary and proper to annul such a consent decree, whether it be an interlocutory or final decree.

7. In such a suit if the court annuls the decree, it should proceed further, and in all respects restore the parties to the situation, they were in, when such consent decree was entered.

8. After such consent decree has been thus annulled, the court should, in the suit in which it was entered, proceed to decide it upon its merits, as if no such consent decree had been entered.

Appeal and *supersedeas,* granted upon the petition of William Manion, from and to two decrees of the municipal court of Wheeling, rendered, one on the 4th day of

April 1876, and the other at the May term 1876 of said court, in a cause in chancery, then in said court pending, wherein said Manion was plaintiff, and Thomas Fahy was defendant.

The *supersedeas* so allowed was directed to extend to the judgment, rendered by said court on a forthcoming bond, executed for the delivery of property, levied upon by virtue of an execution, issued upon said decree of April 4, 1876.

GREEN, PRESIDENT, who delivered the opinion of the Court, furnishes the following statement of the case :

The plaintiff, Wm. Manion, in January 1874, filed a bill in chancery, in the municipal court of Wheeling, to settle up a mercantile partnership between him and the defendant, Thomas Fahy. The bill alleged that the partnership was dissolved by mutual consent on June 16, 1873; that all the assets of the firm were left in the hands of the defendant, who continued in the mercantile business with the understanding, that he would collect the debts due to the firm, and after paying all the debts of the firm, pay over to the plaintiff every Saturday half of the collections made during the week; that all of the debts had been thus paid off, but the defendant refused and neglected to pay over to the plaintiff his share of the profits. And he prayed a settlement of the partnership accounts, the appointment of a receiver, a decree against Fahy for the amount due to the plaintiff, and for general relief. On February 24, 1874 an order was made referring the cause to a commissioner to settle the partnership accounts; and after this decree the defendant, Fahy, filed his answer, in which, admitting the partnership and its dissolution as stated in the bill, and that the books were left with him to collect the debts due the firm, and dispose of them as stated in the bill, he denies, that there was anything due at that time to the plaintiff, and alleges that he and the plaintiff appointed certain persons as arbitrators to settle their part-

nership accounts, who rendered their award, as follows: "Thomas Fahy was to pay to William Manion $1,000.00 cash, and to give to said Manion his note for $644.78, payable in three months; also was to give him (the said plaintiff) his note for another like sum of $644.78, with the understanding, however, that it should be deposited with one W. C. Handlan, and was not to be payable until after the decision and determination of a certain prosecution in the United States district court of West Virginia, in which said partnership, Thos. Fahy & Co., were prosecuted for selling liquor without license, and the said William Manion should have paid one-half of whatever fine the court should impose, and one-half the costs imposed by the prosecution, and one-half of whatever other costs might be incurred in making defense against said charge; and that this defendant was to pay to said Manion one-half of all collections, that were made from the accounts standing on the books on the 14th day of August 1873, supposed to aggregate about the sum of $1,953.33; payments to be made every Saturday night of one-half of the accounts collected during the preceding week.

The defendant avers that he has performed this award in all respects, paying the money required, and offering the bond to W. C. Handlan. The defendant then alleges, "that the arbitrators, in awarding to the said Manion one-half of the amount collected on the accounts, that remained uncollected up to August 14, 1873, made an obvious mistake in this, that the date should have been June 14, 1873, this being the date of the dissolution of the partnership. He expresses his willingness to account with the plaintiff for the uncollected credits of the partnership, and alleges that the plaintiff has no excuse for bringing this suit.

On June 28, 1875 the cause was heard on the bill, answer and general replication thereto, the order of reference was set aside, and the court ordered that an issue be tried by jury, whether the defendant is indebted to

the plaintiff in any sum whatever, and if so, to what amount; and further, to ascertain by their verdict what accounts of the firm of Thomas Fahy & Co. remained uncollected in the hands of either party."

On August 26, 1875 a consent decree was entered, setting aside all the orders made in the cause, and adjudging that a negotiable note for $679.41 should be executed by Thomas Fahy to William Manion, payable October 1, 1875, to be held as an escrow until after the determination of the prosecution named in the answer; and then, in the event that this prosecution is decided against Thomas Fahy, one-half of the fine and costs of prosecution should be paid out of the proceeds of this note, and the other half by the defendant; that Peter W. Bosley be appointed receiver to collect the credits of the firm, and that he should further report to the court all collections of the assets of the firm, which the defendant had made since the dissolution of the firm, his report to be final; and that one-half of said collections shall be at once paid by the defendant to the plaintiff, with interest from the time of their collection; and that plaintiff recover of the defendant the costs of this suit to that date; and all other questions were reserved by said decree.

On November 24 1875 Peter Bosley made his report, showing that since the disolution of the firm, June 13, 1873, Thomas Fahy had collected $1,311.90, and William Manion $28.36; also, that it was said that certain judgments amounting to $71.75 in addition had been paid to Thomas Fahy. His report also shows that he had collected $138.63, and had expended $15.35, leaving a balance in his hands of $123.35. Upon this report, to which there was no exception, being returned, the court on December 4 1873 approved the same, and adjudged that the defendant, Thomas Fahy, pay to the complainant, William Manion, $627.60, the half of the amount reported to have been collected by him since the dissolution of the firm June 14, 1873, with interest on the same from November 24, 1875 till paid, and that said

Manion might have execution therefor, and that the special receiver pay into the hands of the general receiver of the court the funds in his hands. On February 25, 1876 Thomas Fahy filed a petition for the re-hearing of the decree of August 26, 1873, and December 4, 1875, in which he states that a mistake was made in the first of said decrees, in so far as it decrees that one-half of the collections made by Thomas Fahy since the dissolution of the firm, June 14, 1873, should be paid by him to William Manion. It should have been one-half of the collections made since the award of the arbitrators, August 14 1873. That this was what he intended to consent to, and supposed till very recently that he had consented to. His design was to have carried out said award, so far as the same had not been performed. He files with his petition a copy of the award. That this mistake occurred through a mistake of his counsel. When his answer was filed, his counsel having drawn it from a previous statement made by him, which he misapprehended, his counsel made a mistake and inserted therein, that there was a mistake in the award awarding to Manion one-half of the amount collected by him (Fahy) after August 14, 1873," and that the date should have been June 14, 1873, when in point of fact, there was no mistake in the award. This mistake was carried into the consent decree of August 26, 1875. That as the award of said arbitrators, filed with the petition, shows the collections made by him (Fahy) between June 14, 1873 and August 14, 1873, were $1,000.00, for which he accounted to Manion, and that thus, by said consent decree, he is required to pay to Manion his half of this $1,000.00 a second time, and that accordingly the decree against him of December 4, 1875 was $500.00 more than was justly due. He states that, execution having issued on the decree, the city sergeant, Edward M. Davis enforced it by selling property of the petitioner Fahy. The amount thus sold being $816.64, of which $185.60 was costs and expenses, and $630.74 amount

improperly decreed to Manion. At this sale Manion bought $578.81 worth of property, which the petition alleges he had not paid the said city sergeant. The petition prays that said decrees may be re-opened as to the part thereof complained of, and for a re-hearing; that they may be modified as is proper and right; that Edward M. Davis be made a party, and required to answer; that Manion may be compelled to pay for the property bought by him; that the proceeds of the property sold may be decreed to be paid to him except $27.00 with interest thereon, which he concedes is coming to Manion; and that said Davis may be enjoined from paying out the funds in his hands, till the further order of that court and for general relief. Depositions were taken to support this on a notice, which was excepted to, and it was insisted by appellant's counsel was not reasonable, and the execution against Fahy and the return thereon was filed. This return sets out, first, the levy of the execution, and then there is an addition stating that " $876.34 of property levied on was sold, of which William Manion bought $578.81, which he had not paid for."

On February 25, 1876, the day the petition for a re-hearing was filed, the court ordered Edward M. Davis to be made a party defendant, who thereupon waived process and consented that the cause might at once be heard as to him; and the court at once adjudged, that the decree of August 26, 1875 and December 4, 1875 be re-opened for re-hearing, as to the parts thereof complained of, and granted the injunction prayed for against Edward M. Davis. And the re-hearing was deferred till the next term. No process was ever issued against Wm. Manion to answer this petition.

At the next term, on April 4, 1876, the cause was heard on the papers formerly read, said petition, depositions and said execution and return thereon; and the court ordered said decrees complained of to be set aside, as to the points complained of; and that Wm. Manion do pay to Thomas Fahy $578.81 with interest from De-

cember 24, 1875 ; and that Edward M. Davis, city ser-
geant, do pay to Thomas Fahy $21.19 out of moneys in
his hands ; and that execution might issue against Wm.
Manion at once.

On the 31st of May 1876 the plaintiff, Manion, moved
the court to set aside this decree, which by the decree of
May 31, 1876 was rejected ; and the court ordered that
Edward M. Davis, sergeant of city of Wheeling, do out
of the money in his hands pay to Thomas Fahy $30.74,
to be credited on the judgment, that day entered on the
forthcoming bond executed by Manion and A. C. Eger-
ter, his surety, on the execution issued by Fahy against
Manion on the decree entered April 4, 1876.

An appeal and *supersedeas* was allowed to William
Manion from the decrees of April 4, 1876 and May 31,
1876, which *supersedeas* was extended to the judgment by
the municipal court of Wheeling on the forthcoming
bond.

*Davenport & Dovener,* for appellant:

1st. The arbitration was not binding.

2d. Motion of plaintiff to correct decree of April 4,
1876 was proper: *Carper* v. *Hawkins,* 8 W. Va. 302;
*Moore* v. *Hilton,* 12 Leigh 1 ; *Dunbar* v. *Woodcock's ex'ors,*
10 Leigh 648 ; Code W. Va. 637, 638.

3d. Defendant's notice to take depositions insufficient:
*Fant* v. *Miller,* 17 Gratt. 225 ; Code W. Va., ch. 130,
§35 ; *Stubbs* v. *Burwell,* 2 H. &. M. 536.

4th. A personal decree against Manion was error:
*Carper* v. *Hawkins,* 8 W. Va. 292.

5th. Decree was for $578.81 with interest. If Man-
ion did owe Fahy, yet there was in hands of receiver
$123.35 and therefore decree was erroneous.

6th. If court opened the decrees of August 26, and
December 4, 1875, then the court should have made an
order of reference to a commissioner.

7th. The return on the execution was improper: *Shan-
non* v. *McMullen,* 25 Gratt. 211.

8th. There was no evidence to sustain petition of rehearing.

9th. The court erred in not permitting the plaintiff's motion to set aside or reform decree complained of, to be filed.

Counsel for appellant referred to the further authorities, viz:

2 Danl. Ch. Pr. 1006, 1612, 1472, 973, 1459, 1576; 2 Tuck. Com. 505; 27 Gratt. 417; 7 Paige 18; 9 Paige. 636; 2 Pat. & H. 321; 1 Rob. (Va.) 20; 4 Paige 476.

*Caldwell & Caldwell,* for appellee:

A final decree by consent, given under mistake, may be set aside by original bill: *Anderson* v. *Woodford et al.,* 8 Leigh 316, 328, 329. An interlocutory decree, whatever may be its character, rests in the breast of the court, until it has been made final: *Cook* v. *Bay,* 4 How. (Miss.) 485. Every order made in a cause may be rescinded, or modified in the progress thereof, for good cause shown before final decree: *Ashe* v. *Moore,* 2 Murph. N. C. 383.

The decree of December 4, 1875, was interlocutory. It directed funds to be paid to the general receiver, to be held until further order of the court. The parties were not out of court. The whole relief prayed by the bill had not been given.

Where the further action of the court in the cause is necessary, to give completely the relief contemplated by the court, there the decree is not final but interlocutory: *Cocke's adm'r* v. *Gilpin,* 1 Rob. (Va.) 27, 28.

The decree is only interlocutory, if something still remains to be done, and so the parties are not put out of court: *ibid,* 36.

It was not therefore necessary to re-summon the parties into court, to answer an original bill to set aside the consent decree for mistake but it could be done by the court below, for cause shown in the suit pending. A

mistake in a pending cause could be corrected by the lower court in the said case before it was finished.

GREEN, PRESIDENT, delivered the opinion of the Court:

The question presented by this record is : Can a consent decree, alleged to have been, through the mistake of the parties, different from what they really intended, be in any manner modified so as to correspond with what the parties really intended to agree to as the decree to be entered, or should the consent decree, where such a mistake has occurred, be set aside and annulled *in toto;* and in either case, how is such modification, if allowable, or such annulling of the decree to be effected; can it be done by any mode of proceeding in the cause, in which the decree was entered or must it, in every case, be done by a separate suit, brought for this express purpose?

Before considering this question it will be necessary to have a clear conception of the modes of modifying or annulling the decrees of a chancery court, other than consent decrees. The mode of so doing differs in this State considerably from the modes adopted in England and in some of the states of the Union. This difference is caused principally by our having never adopted the English practice of enrolling decrees. By this English practice the decree, whatever its character, is first entered in the registrar's book; but this entry does not, strictly speaking, make it a record. It is subsequently enrolled upon parchment, when it is regarded as a complete and perfect record. The time, which intervenes between this entry of the decree on the registrar's books and the enrollment of it on parchment, is generally considerable. During this intervening time, the record not being regarded as complete and perfect, the decree may be modified or annulled for errors appearing on the face of the record, upon a petition for a re-hearing, whether these errors be errors in the judgment of the court, or errors arising from inadvertence; though, if the error be

1877.
Special Term.

Manion
v.
Fahy

a clear mistake made by the court, or by the counsel in drawing the decree, or if some ordinary direction has been omitted, or a clerical mistake made, the correction may be made, after the decree is entered and before it is enrolled, upon motion simply. But if the error be in matter of substance, the proper mode of correcting it is by a petition for a re-hearing. If however after the decree has been entered, and before it is enrolled, new matter is discovered, which ought to cause a modification or annulling of the decree, it must, by the English practice, be brought forward by a supplemental bill, in the nature of a bill of review; and it cannot be done by a petition for a re-hearing; but it is accompanied by a petition to re-hear the cause at the same time, it is heard on this supplemental bill. Such a bill cannot be filed without the leave of the court, nor without an affidavit similar to that required on a bill of review proper being filed. And to sustain such a bill the same proof is required, as would be required, if it had been a bill of review, filed after the enrollment of a decree. If a decree has been procured by fraud, discovered after the decree is entered but before it is enrolled, the proper mode of correcting it by the English practice is neither by a petition for a re-hearing nor by a supplemental bill, in the nature of a bill of review, but the correction must be asked by an original bill in the nature of a bill of review; see *Mussell* v. *Morgan*, 3 Bro. Ch. R. 74, 79. Such a bill is not a continuance of the former suit, as a supplemental bill in the nature of a bill of review is; but it is a new suit, and like any other original bill, it may be filed without the leave of the court. After the decree has been enrolled, no matter what may be the character of the decree, whether it be an interlocutory decree in the sense in which we use the term, or a final decree, it can, according to the English practice, be modified or annulled by the court, who pronounced the decree only by bill of review, which may be filed for error of law, apparent on the face of the

record, or because of newly discovered matter. If however this enrolled decree was procured by fraud, it can only be set aside by an original bill, in a new suit, and cannot be annulled by a bill of review: *Mussell* v. *Morgan*, 3 Bro. Ch. R. 74. According to the English practice, there is no practical distinction between what we call interlocutory decrees and final decrees, either as to the right of appeal or the right to file a bill of review. If what we call an interlocutory decree be enrolled by the English practice, it may be appealed from, or a bill of review may be filed, to modify or annull it. The mere enrollment of any decree, without regard to its character, by the English practice gives that degree of finality, that makes it liable to correction by appeal or bill of review and in no other manner: *Cocke's adm'r* v. *Gilpin*, 1 Rob. (Va.), opinion of Baldwin, Judge, page 32 and 33. In Virginia, from the foundation of the government, the right of appeal was regulated by statute, and for a number of years was made to depend altogether on the finality of the decree, in relation to appeals to the supreme court of appeals. See 9 Hen. Statute at Large 523, 524. The practice of enrolment being unknown in Virginia, it became necessary to substitute for the simple English rules, above explained, regulating the question, whether a decree should be modified or annulled, by motion, a petition for a re-hearing or a supplemental bill in the nature of a bill of review, or an appeal or bill of review, or an original bill, some other rule which of necessity could be only based on the character of the decree, as their was no such distinction between decree, such as exists in England, that is decrees which were entered on the registrar's book and decrees which had been enrolled on parchment. It was therefore determined that, what we call interlocutory decrees, should for the purpose of determining the manner in which they could be modified or annulled, be regarded as an English decree entered on the registrar's book, but not enrolled on parchment, and final decrees should, for these purposes, be regarded as

English decrees which had been enrolled on parchment. A necessity then arose with us of defining, what was an interlocutory decree and what a final decree; and though this has been a subject of discussion from our earliest judicial history, yet our courts have never yet laid down any really satisfactory definition of what is an interlocutory decree and what a final decree. The difficulty lay in the subject itself; for by various gradations the interlocutory decree may be made to approximate the final decree until the line of discrimination becomes too faint to be readily perceived. Perhaps as satisfactory a criterion as has been laid down is laid down by Judge Baldwin in the case of *Cocke's adm'r* v. *Gilpin,* 1 Rob. 27, 28. The Virginia decisions on the question of what is a final decree and what an interlocutory decree, are more numerous than satisfactory. See *Young* v. *Skipwith,* 2 Wash. 300; *McCall* v. *Peachy,* 1 Call 55; *Bowyer* v. *Lewis,* 1 H. & M. 553; *Templeton* v. *Steptoe,* 1 Munf. 339; *Aldridge* v. *Giles,* 3 H. & M. 136; *Mackey* v. *Bell,* 2 Munf. 523; *Goodwin* v. *Miller,* 2 Munf. 42; *Hills* v. *Fox's adm'r,* 10 Leigh 587; *Elzey* v. *Lane's ex'or,* 2 H. & M. 592; *Allen* v. *Belches, ibid.* 595; *Harvey et ux.* v. *Branson,* 1 Leigh 108; *Thorntons* v. *Fitzhugh,* 4 Leigh 209; *Royal's adm'r* v. *Johnson,* 1 Rand. 421; *Alexander's heirs* v. *Coleman et ux.* 6 Munf. 328; *Cocke's adm'r* v. *Gilpin,* 1 Rob. 20; *Vanmeter's ex'ors* v. *Vanmeter,* 3 Gratt. 143; *Ruff* v. *Starke's adm'rx, ibid.* 134; *Flemming et al.* v. *Bollings et al.,* 8 Gratt. 292; *Davis* v. *Grews,* 1 Gratt. 407.

It would be difficult to determine whether the consent decree in the case before us is an interlocutory or a final decree. I am inclined to think it is a final decree; but it is unnecessary, in this case, to determine its character, as we shall presently show that if the decree be a consent decree, the manner of setting it aside and declaring it a nullity is the same, whether it be an interlocutory or a final decree. It may be here remarked, that in this State and in Virginia it is unusual to file a supplemental bill in the nature of a bill of review, to correct an interlocu-

tory decree under circumstances, such as would require such a bill in England; but instead of such a bill it is usual to file a petition for a re-hearing of the interlocutory decree. See *Roberts, adm'r* v. *Cocke,* 1 Rand. 121. But the difference is one more of form than substance; for where such a bill was necessary in the English practice, the petition for the re-hearing here would have to be filed in the same manner, contain the same allegations, and be sustained by the same proof as such supplemental bill of review would in England; it could only be filed by leave of the court and would have to be sustained by affidavit. In Maryland, where decrees are not enrolled, the decisions of their courts seem to differ from our decisions in considering, that a decree was to be regarded as the equivalent of an English enrolled decree, though interlocutory in its character, after it had been signed by the chancellor and filed by the registrar, and the term had elapsed during which it was made. See *Burch et al.* v. *Scott,* 1 Gill & Johns. 393; *Oliver* v. *Palmer & Hamilton,* 11 Gill & Johns. 137; *Stewart* v. *Beard,* 3 Md. Ch. Decisions 227. In this State and in Virginia an interlocutory decree is, after the adjournment of the term at which it was made, regarded not as an enrolled decree, but as an English decree would be regarded when entered in the registrar's book but not yet enrolled.

Where a final decree has been procured by fraud, it should be annulled or modified, not by a bill of review proper, but by an original bill, or by an original bill in the nature of a bill of review: *Anderson* v. *Woodford et al.,* 8 Leigh 316; *Mussell* v. *Morgan,* 3 Bro. Ch. Cases 74; *Murns* v. *Worrell,* 16 Barb. 221; *Sandford* v. *Sandford,* 5 Cal. 297; *Evans* v. *Bacon,* 99 Mass. 213; *Johnson et al.* v. *Johnson et al.,* 3 Ill. 215; *The Bank of the United States* v. *Ritchie,* 8 Pet. 128. Possibly if the decree has been rendered by default, it might be corrected otherwise than by an original bill: *Evans* v. *Vint,* 6 Munf. 267 and authorities cited. The reason why a final decree procured by fraud cannot be reversed on a bill of review

which constitutes a continuance of the old cause, but the decree must be set aside by a new suit, would seem to be this : a bill of review which opens the final decree is allowed on a newly discovered fact which affects the merits of the case set out in the bill and proceedings, and which ought therefore to be heard in finally disposing of the case. But facts, which establish fraud in procuring the final decree, have no effect whatever on the cause of action set forth in the bill and proceedings, and if the decree was opened, then facts establishing fraud would not be considered in entering up the new decree, but the new decree would be entered up on the pleading and evidence which were in the cause, when the decree assailed was made. The setting aside of a final decree, thus procured by fraud, would seem to be the proper subject for a new suit, having no connection with the real merits of the original suit. If this be the reason why a new suit must be brought, it would follow that though the decree procured by fraud was an interlocutory decree, it could still only be annulled by a new suit, setting up the fraud. Under the English rule, if the decree had been entered by fraud, but had not been enrolled, the new facts constituting the fraud, it would seem, could not be brought before the court in that suit by a bill in the nature of a bill of review : for only such new facts can be brought forward in that way, as are newly discovered and material to the decision of the case, as made by the bill and pleadings. And for the same reason, here or in Virginia, the facts constituting the fraud, by which the court was induced to enter an interlocutory decree, it would seem, ought not be brought forward by a petition for a re-hearing, for as we have seen, such petition is a mere substitute for a bill in the nature of a bill of review under the English practice. A decree, other than a consent decree, which has been entered by surprise or by mistake of the parties, would seem to stand upon the same footing and whether interlocutory or final, should be set aside by a new suit for the purpose. The case in 8 Leigh was one

of surprise rather than fraud. The authorities however on the question whether an interlocutory decree, not entered by consent, but procured by fraud, surprise or mistake of the parties, can be set aside by a bill in the nature of a bill of review, or by a petition for a re-hearing, are not clear or distinct, though the probable inference to be drawn from them is, that such interlocutory decrees cannot be so set aside, but only by an original bill. See *Mussell* v. *Morgan*, 3 Bro. Ch. Cases. 74; *Anderson* v. *Woodford et al.* 8 Leigh 316; *Mann* v. *Worrell*, 16 Barb. 221; *Sandford* v. *Sandford*, 5 Cal. 237; *Evans* v. *Bacon*, 99 Mass. 213; *Johnson et al.* v. *Johnson et al.*, 35 Ill. 215; *Bank of United States* v. *Ritchie*, 8 Pet. 128.

Let us now consider how consent decrees can be modified. During the term of the court, at which a decree is entered, it is completely under the control of the court, and may on motion, or at the suggestion of the court without motion, be modified or annulled: *Burch* v. *Scott*, 1 Gill & J., 398. A decree procured by fraud may be so set aside during the term of the court, at which it was made, but not afterwards. See *Doss* v. *Tyack*, 14 How. U. S. R. 297. And the same rule would apply to a consent decree; but from the very nature of a consent decree, it cannot be altered or modified, except by consent, unless there has been a clerical mistake, for though the court be satisfied that the parties had formerly agreed to have a decree, in substance, such as the modified one entered, which, by a mistake other than clerical, was not entered, but a different decree entered, how can the court enter this modified decree as a consent decree, when one of the parties is present and protests against its being entered as by his consent? The entry of a consent decree is a statement on the record, not that theretofore the parties agreed to enter such a decree, but that they now (when the decree is entered) consent to its entry. And if they do not, when it is to be entered, consent to the court's entering it, it cannot

be so entered. Neither could the court enter such modified decree generally, as a decree made by the court without the consent of parties; for such a decree can only be entered on the merits of the case according to the judgment of the court; and this modified decree is not generally such a decree, but is one only which the parties formerly agreed to, and generally is not sustained by the facts in the record, and upon the propriety of which the court has never exercised its judgment. A case might arise, when a party might be liable to a common law action for refusing to carry out his agreement, and objecting to the entering of the consent decree as modified. But, except by consent of all parties, the court cannot modify a consent decree, except in the case where the clerk, in entering the decree from the' draft furnished him, has made a mistake. Such a mistake would formerly have been corrected by bill of review, or by bill in the nature of a bill of review, according to the English practice or here by a bill of review, if the decree was final, or a petition for a rehearing, if the decree was interlocutory: 8 Anon.; 1 Ves. 93; and *Atkinson* v. *Marks*, 1 Cow. 693. Now such clerical mistakes may be corrected on motion at a subsequent term: Code of W. Va., chap. 134, §5, p. 638.

The next inquiry is: Can a consent decree be set aside; if so, how? It seems to me clear both on principle and authority, that except in the before-stated cases, no consent decree can be set aside, whether it be interlocutory or final, by any subsequent proceedings in the case. If the consent decree has been entered through the fraud of one of the parties, or through mutual mistake, or by surprise, it may be set aside and annulled by a new suit, in which the bill would set out the facts constituting the fraud, surprise or mistake; and the decree thus procured, though it purported to be a consent decree, would be annulled. But a consent decree, though its entry had been thus induced, can never be set aside on motion, petition for a re-hearing, bill of review, appeal, or

63

any other proceeding in the cause, in which such decree has been entered. This position is sustained by numerous authorities. It was so held by Lord Hardwick, in *Brudish* v. *Gee,* 1 Amb. 229. In *Richmond* v. *Taylour,* 1 Dick. 38, the Lord Chancellor stated that a consent decree might be impeached for fraud in its procurement, by an original bill. It was held that a consent decree could not be reviewed by a bill of review, in *Webb* v. *Webb,* 3 Swan. 658 ; the same decision was rendered in *Smith* v. *Turner,* 1 Vern. 274. In *Toder* v. *Sansom,* 1 Brow. P. C., 468, it was held that an appeal would not lie from a consent decree. This would seem almost self-evident, as on the appeal no evidence could be produced showing fraud, accident or mistake ; yet we will presently see one court has, in modern times, decided otherwise. In *King* v. *Wightman,* 1 Anstruther 81, Chief Baron Eyre says, there has been no instance of the court granting a re-hearing of a consent decree, though it were grounded on the most obvious mistake ; and in *Harrison* v. *Ramsey* 2 Ves. Sr. 488 the court held, that where the consent to the decree was given by counsel, it bound the parties and could not be re-heard.

Chancellor Blond in Ringold's case 1 Blond's Ch. R., p. 12, says : " In order that an appeal may lie, the decree or order appealed from must have been adverse, and not made by the express or tacit consent of the appellants; as when a party thinks proper not merely to decline opposition to measures which the court would enforce, but by himself or his counsel consents to a decree or order, there lies no appeal from it, even although he gave no such authority to his solicitor, his remedy being against his counsel." In *French* v. *Shotwell,* 5 Johns. Ch. R. 564, it was decided that a decree entered by consent is binding and conclusive on the parties; but if it was procured by fraud, it could be set aside in a suit brought for that purpose; and if was entered in form different from what was intended by the parties or either of them, by mistake, accident or sur-

prise, I see no reason why it should not be in like manner set aside by a suit, instituted for the express purpose It is true that in the case of *Oliver & Brewer* v. *The State of Connecticut et al,* 8 Ohio, p. 189, the court decided that in Ohio an appeal lies from a consent decree ; but the court in its opinion states, that this has been otherwise decided in England and in New York ; and they base their decision on the comprehensive language of the Ohio statute in granting the right of appeal, and their so doing renders it unnecessary to comment on the decision. These authorities seem to settle it to be law, that a consent decree cannot after the term, at which it was entered, be set aside by any subsequent proceedings in the cause, except for a mere clerical error, even though such consent decree was procured by the fraudulent conduct of one of the parties, and that this is true whether the consent decree be interlocutory or final. The reason of this conclusion would seem to be, that by the rules of chancery practice under certain circumstances and in certain manners a party will be permitted to have a decree annulled or modified, by introducing into the cause new facts, not theretofore considered by the courts when the decree was entered ; but such new facts must bear upon the issue made by the bill and pleadings, and be such as will change by their weight the judgment of the chancellor on the subject of controversy. But if the decree be a consent decree, neither party, by subsequent proceedings of any sort, ought to be permitted to prove new facts, which in no manner bear upon the issue made by the pleadings between the parties, but which tend only to show that the consent of one party to the decree was obtained by the fraud of the other, or by his mistake ; for this involves a new and entirely different issue between the parties; and it should be determined only in a new suit brought for the purpose. When such new suit is ready for decision, if the plaintiff sustains his allegation in the bill, he is entitled to a decree nullifying not only the consent decree complained of, but all subsequent decrees based upon such consent decree; and if the consent decree, or

such subsequent decrees based on it, have been executed in whole or in part, the plaintiff is entitled to such further decree, as will restore the parties in all respects to the situation, in which they, were when such consent decree was entered ; such consent decree and subsequent decrees based on it being declared nullities. The court in which the suit was pending, in which such consent decree was entered, will then proceed in the cause, precisely as if no such decrees had been entered, and decide the same on it its merits. The order annulling the consent decree and others based on it having been filed in this cause first. The court below therefore erred in permitting Thomas Fahy to file his petition for a re-hearing, based on the allegation that his counsel and he made a mistake in giving their consent to the decree of August 26, 1875 ; and in proceeding to hear the cause on this petition, and set aside said decree of August 26, 1875, and the decree of December 4, 1875 based thereon, or any part of said decree. It is therefore unnecessary to consider the various errors, alleged to exist in the judgment of the court on the merits of said petition for a re-hearing, and in the details of the decrees, entered by the court after setting aside said consent decree, as consequent thereon. The decrees of February 25, 1876 and of April 4, 1876 must therefore be reversed and annulled, but without prejudice to Thomas Fahy to file his original bill, to have set aside for the causes, alleged in his petition, the said decrees of August 26, 1875 and December 4, 1875, and to be restored in all respects to the position, in which he was prior to the entry of said decree of August 26, 1875, if he shall be advised so to do. And the appellant must recover of the appellee, Thomas Fahy, his costs expended in prosecuting his appeal ; and this cause must be remanded to the municipal court of Wheeling, with instructions, that it be further proceeded with in the manner and on the principles laid down in this opinion, and further according to the rules and principles governing courts of equity.

DECREES REVERSED, and cause remanded.