# Wheeling.

## PARSONS v. THORNBURG et al.

### Decided December 18, 1880.

1. While the general rule as laid down by this Court requires, that when the court directs the sale of real property, it shall first ascertain the amounts of the lien-debts, and their respective priorities and give a day for payment in the decree, still this rule is not so fundamental in its requirements as to prevent the parties to the cause, who may be interested in its enforcement, · from dispensing therewith or waiving a compliance therewith by their consent.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Cabell, rendered on the 16th day of September, 1876, in a cause in said court then pending, wherein H. C. Parsons was plaintiff and J. L. Thornburg and others were defendants, allowed upon the petition of said Parsons.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

In August, 1875, the plaintiff filed his bill in equity with order of injunction in the circuit court of Cabell county against James L. Thornburg, Thomas Thornburg, trustee, Virginia Thornburg, the wife of James L. Thornburg, Saint Cloud Power Company, a corporation created and existing under the laws of West Virginia, W.

P. Holderly, W. H. Harvey, Thomas H. Harvey, Robert Harvey, Samuel H. Mitchell, Ermina Flickinger, John H. Flickinger, J. B. Brooks, V. D. Camp, John C. Tanner, Jane S. Hatch, trustee, Warren J. Parsons, Aaron Walker, Albert Ruger, B. E. Thayer, Alfred Sperry, I. Parsons, C. S. Randall, E. E. Randall, Cassandra Philip, T. C. Philip, William Harp, J. C. Boyd, Eliza W. Loomis and Thomas Mitchell. The bill is as follows:

1880
Special Term.

Parsons
v.
Thornburg et al.

" Your complainant, humbly complaining, showeth unto your honor, that on the —— day of ——, 18—, he purchased by title-bond of James L. Thornburg a tract of eighty acres, more or less, of land within a certain described boundary lying in the county of Cabell, West Virginia, and near the corporate limits of the city of Huntington, with the southern line running with the middle of the surveyed route of the Chesapeake and Ohio railroad, and from thence north to the Ohio river; and for which said Thornburg was to give a deed of general warranty upon conditions named in said title-bond; that afterwards, to wit, on the 20th day of September, 1871, he announced to the said Thornburg his readiness to comply with the same, upon which the said Thornburg tendered this complainant a deed with a line commencing fifty feet north of the agreed and contract line along the line of the said railroad, and alleged, as his reason therefor, that he had by a contract with the said Chesapeake and Ohio railroad company bound himself to give to said company the said fifty feet as right of way in consideration of a life-ticket on said road; but this complainant protesting against and refusing said deed, said Thornburg assured this complainant that if he would accept said deed and would procure the surrender and cancellation of said contract with said railroad company, he, the said Thornburg, would make this complainant a deed for the whole of the land according to the contract of purchase, and your complainant accepted the deed tendered upon that understanding. Your complainant avers that he did afterwards procure

the surrender and cancellation of said contract with the said railroad company, and that the said Thornburg instead of making the deed as he had agreed and bound himself to do, he sold the said fifty feet and conveyed the same to the defendant, Thomas Mitchell, thereby entailing a loss upon your complainant of about two acres of very valuable land, worth $250.00 per acre, which your complainant had purchased of said Thornburg and obligated himself for, and for which the said Thornburg has ever since refused to give him any relief or credit. In the purchase of said land your complainant paid to the said Thornburg the sum of $1,000.00 in cash, and executed his note on the 20th day of September, 1871, for the sum of $9,000.00, with six per centum interest thereon from the 1st day of January, 1872, till paid, and secured the payment of the same by giving a deed of trust on said land of even date to Thomas Thornburg, as trustee, a copy of which trust-deed is filed herewith as exhibit "A," and which said note, together with its interest to date, would amount now to ten thousand eight hundred and ninety dollars ($10,890.00), but upon which note complainant has at various times paid seventeen hundred and ninety-seven dollars and fifty cents ($1,797.50), leaving a balance of nine thousand one hundred and ten dollars ($9,110.00) still due the said Thornburg, subject to a reduction for the above named acres not conveyed by the said deed.

"Your complainant further avers that since the purchase of the said land he has had the same laid off into lots, streets and alleys, as the town of "Saint Cloud," a map of which is filed herewith as exhibit "B," and that many of said lots have been sold, and that he has expended upon the said land in permanent improvements at least $10,000.00, and that the above named defendants as purchasers of said lots have in like improvements, expended at least the sum of $35,000.00, and that by reason of these improvements the town of "Saint Cloud" is now a thrifty manufacturing town, and that the lots

1880
Special Term.

Parsons
v.
Thornburg et al.

are valuable and saleable as lots. Your complainant avers that since the said purchase from said Thornburg, he has sold lots of said land to the various defendants upon an express agreement with the said Thornburg, that as fast as this complainant should sell as much as one acre he should pay over to the said Thornburg the sum of two hundred dollars ($200.00), for which the said Thornburg agreed to a release of said acre, and with this understanding this complainant proceeded to sell a large number of said lots to different persons, defendants named above; and with that understanding the said Thornburg surveyed and laid off said land into lots, and was present when many of the parties named above selected their lots, and made surveys for them, and never made any objection to the laying off of said lots, or the sale of them; and the said Thornburg knew and was apprised of the general notoriety of the above understanding. Your complainant, after selling a number of acres, tendered to the said Thornburg the aforesaid agreed sum of $200.00 for a release upon each acre, and requested a release as agreed upon, but to your complainant's surprise the said Thornburg utterly refused to accept the same and give the release, and gave as the reason for refusing, that his attorney told him, that it would injure and avoid his trust-deed. And your complainant, by said Thornburg's refusal to accept the sum agreed upon per acre, and to release the same, prevented the collection from purchasers of said lots of some $2,000.00, which sum would have been paid to the said Thornburg in extinguishment of that amount of his claim; and by his failure to comply with his said agreement, your complainant has been subjected to the loss of said collection at a time when he was greatly in need of it.

"Your complainant avers, that the defendants above named as purchasers of said lots bought under this understanding, and improved them largely by reason of the same, so that a sale of the whole tract under this trust-

deed would render your complainant liable to said purchasers for the immense sum of thirty-five thousand dollars ($35,000.00), for the various ——, consisting of dwelling and out-houses, storehouses, manufactories, fencing, &c. Your complainant avers, that notwithstanding these various breaches of good faith and contract on the part of the said Thornburg, notwithstanding the change of the eighty acres of improved land into town lots in a thrifty town built up by this complainant, notwithstanding the immense interest of all the various purchasers of lots, who purchased and largely improved upon the express agreement above referred to with said Thornburg, notwithstanding the utter ruin the sale of this land as a whole under said trust-deed would bring upon your complainant, and notwithstanding the fact that a sale by lots of only a portion of the vacant, unsold and unimproved lots would bring more than the balance of the purchase-money due, the said James L. Thornburg has directed and procured the said Thomas Thornburg, trustee, to advertise the above named tract of eighty acres as a whole for sale, a copy of which notice is filed herewith as exhibit "C," and the said Thomas Thornburg has failed to advertise the sale of said land according to the requirements of said trust-deed, for cash, on the 10th day of August, 1875, to pay the sum of ten thousand four hundred and forty-five dollars ($10,445.00), being $1,345.50 more than this complainant would be owing, if he had the above named two acres purchased from but not conveyed by the said Thornburg, hoping thereby in selling the whole in these hard times by unconscionable conduct to regain possession of all this land and the improvements thereon, and thus become rich over the labor and misfortune of your complainant.

"Your complainant, therefore, prays that the said Thomas Thornburg, trustee, James L. Thornburg and all others be restrained, inhibited, enjoined and prohibited from proceeding to enforce said trust-deed—from making the sale, or from proceeding in any man-

ner to collect said note until and after the said James L. Thornburg shall be required to make a good deed for the land according to the contract of purchase, or to give him a proper credit upon his said note for the amount of the value of that not conveyed; and that the said James L. Thornburg in his answer be compelled to produce the original contract which he now holds; that he be required to give this complainant the further credit of $1,334.50 above referred to ; and that when these reliefs and credits have been given by the said James L. Thornburg, then that the said Thomas Thornburg, trustee, be required—if he has to sell—to sell by lots as laid off on the map of the said town of Saint Cloud; and to sell first only such lots as are unsold and unimproved, and only so many of them as will be sufficient to pay what will be due on said deed of trust at the time of such sale ; and that unless the said James L. Thornburg, of his own will do these things, that it be referred to a commissioner of your honor's court to take, state and report an account showing the amount of this complainant's credits and offsets, the value of the lands unsold, &c., together with all such other and general relief as your complainant is entitled to in law and equity. And as in duty bound he will ever pray, &c.

The defendant, James L. Thornburg, filed his answer to the bill, which is as follows :

" This defendant demurs to the said bill of the said plaintiff, and for cause of demurrer says, that the allegations of said bill are not sufficient in equity to entitle the plaintiff to the relief, or any part thereof prayed for therein, or to compel this defendant to answer the same. And this defendant, in no wise waiving his said demurrer, but still insisting thereon, for answer to said bill, says that it is not true, as charged in said bill, that he sold the land therein mentioned to the complainant, but, on the contrary thereof, this defendant sold the said lands to Albert Laidley, and gave him a title-bond therefor, which bond, bearing date the 26th day of February,

1880
Special Term.

Parsons
v.
Thornburg et al.

1870, is herewith filed as part of this answer as exhibit No. 1. The land, so sold to said Laidley is described in said title-bond as ' all that portion of his farm lying north of the present line of the railroad, lying in Cabell county, West Virginia, between Jacobs and J. L. and William L. Johnson's land ;' that the said purchase was made by the said Laidley, as he was informed and believes, for the use and benefit of C. P. Huntington, who was interested in the Chesapeake and Ohio railroad; that afterwards, on the 9th day of January, 1871, the said C. P. Huntington executed an instrument of writing whereby he gave his consent that the said Albert Laidley might assign the said title-bond to Warren J. Parsons; and afterwards, to wit, on the 2d day of August, 1871, the said Warren J. Parsons, by an endorsement on the said writing, gave his consent to the assignment of said title-bond by said Laidley to the plaintiff, H. C. Parsons ; (this writing so executed by the said Huntington, with the endorsement aforesaid of the said Warren J. Parsons thereon, is herewith filed as part of this answer marked exhibit No. 2); that no actual assignment of the said title-bond appears to have been made by said Laidley to any one, but this defendant found it in the possession of said plaintiff, as hereinafter mentioned.

" And the defendant, further answering, says that it is not true, as charged in the said bill, that the southern line of the lands so sold by him ran with the middle of the surveyed route of the Chesapeake and Ohio railroad, but, on the contrary thereof, the whole of the said tract of land lay north of the line of the Chesapeake and Ohio railroad, as is conclusively shown by reference to said title-bond, as the lands therein mentioned are the same lands afterwards conveyed by this defendant to the plaintiff, as hereinafter mentioned.; that previous to the sale of the said lands to the said Laidley, to wit, on the 12th day of January, 1870, he at the instance and request of the said Laidley, executed an instrument in writing, partly written by said Laidley and partly by himself, whereby

this defendant bound himself to convey to the Chesapeake and Ohio railroad company the lands which might be necessary for the construction, use and enjoyment of a double-track railroad, not to exceed in width one hundred feet, through the lands then owned by him, upon the terms and conditions mentioned in said writing, which writing is herewith filed as part of this answer marked exhibit No. 3; that the said plaintiff was also in some way connected with the said railroad company, and knew all about the said agreement No. 3 in regard to the conveyance of said right of way to said company before the execution and endorsement thereon of the paper, exhibit No. 2; that some time in the winter of 1870-71 the said plaintiff came to this defendant and said in substance: 'We have your contract for one hundred feet for right of way for the railroad, and I want to buy fifty feet more along the south side of the railroad;' which proposition was rejected by this defendant. . He made several other efforts afterwards to make the purchase as above proposed by him, all of which were rejected by this defendant, and when he, the plaintiff, found that he could not make said purchase, he then for the first time claimed that the southern line of the lands sold by this defendant to said Laidley ran with the centre of the surveyed route of the railroad, which claim was at once denied by this defendant; that this claim was for some time persisted in by the said plaintiff and denied by the defendant, but as the title-bond was during all this time in New York, as stated by said plaintiff, this dispute could not be definitely settled by a reference to it; that finally, about the 12th or 13th day of September, 1871, this defendant told the said plaintiff in substance, that he, plaintiff, knew all about the circumstances connected with the purchase of the said land by Laidley, and that the contract for the right of way was given first; that this defendant thought it very strange under these circumstances that he, the plaintiff, should claim that the land sold to Laidley ran to the middle of

1880
Special Term.

Parsons
v.
Thornburg et al.

the railroad track—to which the plaintiff replied that he did not claim it; and from that time till the filing of the bill in this case he never set up any such claim to the knowledge of this defendant; that about the 18th of September, 1871, the said plaintiff met this defendant at a sale on the premises of J. H. Poage, and proposed to this defendant that he should execute to him the deed for the land according to the said title-bond given to Laidley as aforesaid, to which this defendant replied that he would not make the deed until his said title-bond was returned to him; the plaintiff then proposed, in substance, that this defendant should execute the deed for the land and retain the possession of it for the time being, and he, the plaintiff, would execute the deed of trust on the land for the payment of the residue of the purchase-money and leave with his wife, and then go to New York, where he would get the title-bond if it had not already been mailed to him, and bring it with him on his return, or send it—this defendant does not distinctly remember which—and in case said bond had been sent and was received by his (plaintiff's) wife in his absence, this plaintiff was to deliver her the said deed and she was to deliver to him the deed of trust and title-bond; that on this same day the said plaintiff informed this defendant that his said contract to convey the right of way to the railroad company had been rejected by the said company, which was the first intimation this defendant had received of that fact; that on the 20th day of September, 1871, this defendant informed the said plaintiff that he was ready to execute the deed for the land as proposed on the 18th day of September, and if it was a fact that the railroad company had rejected his contract for the right of way he would make the southern line of the land to run fifty feet from the centre of the then location of the Chesapeake & Ohio railroad, but if it had not been rejected he would make said southern line to run sixty feet from the centre of the said location of said railroad as he was informed that said company

were claiming sixty feet from centre of said location on the north side thereof. He, the said plaintiff, then produced the said contract for the right of way aforesaid and surrendered it to this defendant, and this defendant on the same day made the endorsement which is found thereon, and made, executed and acknowledged the deed to said plaintiff, a certified copy of which is herewith filed as part of this answer marked exhibit No. 4, but kept the possession thereof under the arrangement aforesaid; that the said plaintiff on the same day executed the deed of trust mentioned in the bill, and kept possession thereof under said arrangement. A copy of said deed of trust as alleged in the bill is herewith filed as exhibit "A," and the same is here referred as part of this answer; that by reference to said deed and a copy of the said deed of trust it will be seen that both of them described the southern line of the said land as running fifty feet from the centre line of the then location of the Chesapeake and Ohio railroad.

"And this defendant, further answering, denies that the said plaintiff, on the 20th day of September, 1871, or on any day previous thereto, announced his readiness to comply with the conditions of the said title-bond, but what he did do on that day, on the 18th day of September, 1871, has already been stated herein; and this defendant denies each and every statement and allegation on page 2 of said bill, beginning with the word 'upon' in the first line on said page and ending with the word 'understanding' in the sixteenth line on said page 2, and denies, and says there is not a word of truth in the whole statement so denied, but on the contrary thereof, this defendant avers and says that the said contract for the right of way was actually delivered up to him on the said 20th day of September, 1871, and the said deed was not delivered to the said plaintiff until in the month of November or December afterward.

" And this defendant, further answering, denies each and every other statement and allegation of the said bill

1880
Special Term.

Parsons
v.
Thornburg et al.

contained on page 2 thereof, after the word 'understanding,' except the allegation of the sale to Mitchell, and says that there is not one word of truth in any of said statements and allegations except as above stated.

"And this defendant, further answering, says that after the execution of said deed and deed of trust, the said plaintiff left for New York, and after some ——— returned to his home and told this defendant that the title-bond had come, and thereupon this defendant told him that he, defendant, would take the deed and deed of trust and have them recorded, and he would then deliver him, the plaintiff, the deed and get the title-bond. Whereupon the plaintiff delivered said deed of trust to this defendant, and he took it and the deed for the land to the plaintiff to the office of the recorder of Cabell county, and had them both recorded on the 23d day of November, 1871, and returned home with both the deed and deed of trust in his possession; but as to the delivery of the deed to the plaintiff, this defendant cannot state just when it was delivered, or to whom—whether to the plaintiff or his wife, but he remembers distinctly that when it was delivered he did not get his title-bond as had been promised him by the plaintiff. This defendant complained of the said breach of promise, and some time afterwards he received a letter from the plaintiff in relation thereto, dated December 23, 1871, which is herewith filed as part of this answer, marked exhibit number '5;' that upon the reception of this letter, defendant went and saw the plaintiff, and told him in pretty plain terms that he had deceived him, the defendant, in regard to his, the plaintiff's, having received the title-bond, and his, the defendant's, opinion of such deception; and thereafter he received a letter from the said plaintiff upon the subject, dated the 30th day of December, 1871, which is herewith filed as part of this answer marked exhibit number '6.' Upon receiving this letter, this defendant again called upon the plaintiff and told him he did not want to put him to trouble, and if he would get

the title-bond and deliver it up, that was all he wanted; and the plaintiff again promised to get it, which he did, and delivered it to this defendant, together with a letter of James J. Tracy, treasurer of the Chesapeake and Ohio railroad company, dated January 6, 1872, which is herewith filed as part of this answer marked exhibit number '7.'

"And this respondent, further answering, says that at the same time he received the letter marked exhibit No. 5, he received with it the said paper executed by C. P. Huntington marked exhibit No. 2, with the endorsement thereon made by Warren J. Parsons, and another at the foot thereof made and signed by the plaintiff, dated the 22d day of December, 1871, by which endorsement the said plaintiff acknowledges a deed in accordance with and in discharge of all the obligations of the 'above mentioned contract,' meaning thereby the title-bond of this defendant to said Laidley for said land. This endorsement by said plaintiff is also made part of the answer. This deed thus acknowledged describes the southern boundary of the land thereby conveyed as being fifty feet from the centre of the then location of the Chesapeake and Ohio railroad, which deed, as above stated, was executed on the 20th day of September, 1871; and this description in the said deed he, the said plaintiff, on the 22d day of December, 1871, three months and two days after the execution of the said deed, and also after the execution of his said deed of trust in which he describes the said line of said land in the same way, was accepted by the said plaintiff as aforesaid. This defendant, therefore, submits that it is too late under all these facts for the said plaintiff now to come in with such false and flimsy allegations as those hereinbefore denied by this defendant; and in this connection this defendant also calls the attention of the court to the fact that in all the letters of the said plaintiff herewith filed he never in any way complains or intimates that this defendant had by the said title-bond or otherwise agreed to make the

centre of the then location of the railroad the southern line of said land, or that the said deed did not fully comply with the terms of the said title-bond.

" And this defendant, further answering, says that it is not true, as charged in the said bill, that the said plaintiff has paid him on the said note the sum of $1,797.50, but he has paid in all on the said note the sum of $1,515.55, of which sum $1,160.00 was paid for interest on said note up to the 1st day of September, 1873, and the credit on said note, in the handwriting of the plaintiff, was made for that payment, or in other words, for a large number of payments amounting in the aggregate to the said sum of $1,160.00. And that since these payments so credited the said plaintiff has paid him on said note the following sums, to wit: On the 22d day of September, 1874, in cash $200.00; nails, sixty-five pounds; gray lime, twenty barrels; white lime, six barrels; plaster paris, one barrel; amounting in all to $40.55. These items were gotten in the month of September, about the time of the cash payment, but this defendant cannot state the exact date, and therefore, he is willing to allow them all as of the same date of the cash-payment, check of plaintiff, or of some one else endorsed by him, for $50.00, received October 17, 1874, on October 26, 1874. $50.00, either in money or check—this defendant does not remember which—and $15.00 in money or check some time in the fall of 1874—this defendant cannot state exactly when—making in all $355.55. And this defendant avers that this is all that has in any way been paid on said note, and the court will perceive that said payments do not pay the interest on the said note now due by several hundred dollars.

"And this defendant further answering, denies that he ever made any such contract or agreement with the plaintiff as that stated in the bill in regard to the release of his lien on each acre sold by the plaintiff upon the payment of $200.00, or any other sum, but the true facts in relation to that matter are as follows : The said plain-

tiff did make a proposition of the nature of that stated

in the bill, but he did not name any definite sum to be paid to this defendant upon the release of each acre, but spoke of it as a sum to be agreed on of from $200.00 to $500.00. To this proposition this defendant replied that he was afraid it might affect his lien on the land· The plaintiff then suggested that defendant should go and consult counsel on the subject, which he did, and when he saw the plaintiff some time afterwards, he informed him that he would not agree to release any portion of the land until his debt was paid, and thereafter he always told the plaintiff the same thing when he was approached upon the subject. The defendant does not know what representations the plaintiff made to persons to whom he sold lots, nor upon what understanding or agreement the same were purchased of him, but if he represented to any one that this defendant ever in any way agreed to release any portion of the said land until the whole of his debt was paid, he stated what was not true, and he ought to have known that it was not true· It is true, that this defendant surveyed and laid off some lots for the plaintiff, but it is not true, that he did so with any such understanding as is stated in the bill; this defendant has no recollection of the surveying of any lots for purchasers thereof as charged in the bill, and he feels very certain that he did not, and he calls for proof of said allegation, if it is relied on by the plaintiff as important in this case; but this defendant is advised and believes and so charges, that he·in no way impaired his said lien on said lands, or any part thereof, by surveying lots either for the plaintiff or purchasers of such lots, or by seeing others lay off said lots without objection, or by seeing such lots sold and improvements made thereon without objection or without informing the purchasers of his said deed of trust.

"And he is further advised and believes and so charges, that as his said deed of trust on the said land for the payment of the purchase-money thereof was on record

in the proper office in this county, it was notice to all the world, and every one who purchased any part of said land was bound to take notice thereof at his peril, and it was not his duty, as he was also informed and believes and so charges, to interfere in any way with the sale of lots by the plaintiff, or to inform the purchasers thereof of his lien thereon, and he has no doubt that had he done so the plaintiff would have made a grievous complaint against him for so doing, and rightfully so. This defendant denies the allegations of the bill that he knew of the notoriety of the understanding alleged in the bill as to such release of lien. If any such understanding became notorious it grew out of the false statements to that effect, as he supposes, of the plaintiffs, and not by reason of any statements of this defendant; and he submits that an agreement on his part to release his lien could not have circulated in a manner to become notorious without it becoming equally notorious that he had a lien on the land which had to be released in order to give purchasers of any part thereof good title thereto.

"This defendant, further answering, denies that the plaintiff ever tendered him any money at any time in pursuance of any such pretended agreement, as alleged in the bill, and he denies each and every allegation of the bill in relation to said tender and his alleged refusal thereof; and he denies that the plaintiff ever made him a tender of money on any account whatever, except the moneys paid to him on said debt secured to him by the note and deed of trust aforesaid; he also denies the allegations of the bill that the notice of the sale under said deed given by the trustees therein was not such as was required by the deed of trust. The notice appended to the bill was published in the Huntington *Advertiser*, and he is informed by the trustee, and he believes the fact to be so, that he posted a copy of said notice on the door of the court-house of this county, as required by the deed of trust. As to the doleful lamentation set up by the plaintiff in the closing part of his bill, commencing

with the ninth line on page five of said bill, and extending to the prayer thereof this defendant denies each and every allegation thereof, which connects or tends to connect him with any of the direful consequences to the plaintiff or the purchasers stated therein, but on the contrary thereof he avers and charges, that if any such consequences should follow the enforcement of his lien, it will result from no fault of this defendant, but solely from the false statements and false promises of the plaintiff himself, and from misplaced confidence of said purchasers in him.

"And this defendant, further answering, says that his debt, as already appears, became due and payable on the 1st day of January, 1872, and since that date, this defendant has time and again called upon and importuned the plaintiff to pay his said debt, or a considerable portion of it, which he has as often promised to do, and has then broken his promise, and down to this time he has not only not paid to this defendant one cent of the principal debt due him, but he is in arrear as to the interest to the amount of several hundred dollars. And in this connection, this defendant calls the attention of the court to the five answers of purchasers already filed in this case, four of them showing that the purchasers therein named have paid to the plaintiff upon the lots bought by them in the aggregate the sum of $2,246.00, and the other says he has paid the whole of the purchase-money, but does not state the amount. There are a large number of other purchasers named in the bill who have not answered who have probably paid the plaintiff in whole or in part for the lots purchased by them, which sums, if they had been appropriated to the payment of this defendant's debt would have paid the whole of the interest due thereon, and in all probability gone far toward the payment of the principal thereof. And this defendant having thus answered, he prays that the injunction awarded in this case be dissolved, and the plaintiff's bill dismissed with costs."

The exhibits mentioned and filed with the answer of James L. Thornburg are as follows:

## EXHIBIT NO. 1.

"*Know all men by these presents,* That I, James L. Thornburg, am held and firmly bound unto Albert Laidley in the sum of $20,000.00, for value received, as witness my hand and seal this 26th day of February, 1870. But this bond is on this condition, that whereas, the said James L. Thornburg has this day bargained and sold unto the said Laidley all of that portion of his farm lying north of the present line of the railroad lying in Cabell county, W. Va., between Jacobs's and J. L. and William L. Johnston's land: Now, if the said Laidley shall pay said Thornburg $1,000.00 to-day, and further pay in American gold coin the sum of $7,500.00 or the sum of $9,000.00 in currency, on or before the 1st day of October, 1870, said Thornburg to retain possession until the 1st of October, 1870, then the said Thornburg binds himself to make a general warranty-deed conveying said land to said Laidley, or his order, which when done, then this bond to be void, else to remain in full force; but the said Thornburg is to elect by the 20th day of September, 1870, which he will take, either the sum of $7,500.00 in gold coin, or the $9,000.00 in currency, but said Thornburg shall have time to gather his crops off of the land.

"JAMES L. THORNBURG, [Seal.]

"ENDORSED.—Rec'd this 26th day of February, 1870, on the within bond $1,000.00.

"JAMES L. THORNBURG.

"I have complied with this contract by making deed to H. C. Parsons, to whom this contract was assigned.

"JAMES L. THORNBURG."

Exhibit No. 2, filed with defendant, James L. Thornburg's answer is in the words and figures following, to wit:

"For value received, I hereby consent that Albert

Laidley assign to Warren J. Parsons, of Cabell county, West Virginia, a certain contract or bond for the sale of a portion of a farm lying north of the present line of the Chesapeake and Ohio railroad, lying in Cabell county, West Virginia, between W. A. Jacobs's and R. and William L. Johnston's land, executed by James L. Thornburg to said Laidley, on said Parsons assuming the further payments on said contract.

1880<br>Special Term.

Parsons<br>v.<br>Thornburg et al.

"C. P. HUNTINGTON.

"Dated January 9, 1871.

ENDORSED.—"For value received, I hereby consent that Albert Laidley assign the contract referred to in the above writing to H. C. Parsons.

"WARREN J. PARSONS.

"Dated August 2, 1871.

"I hereby acknowledge a deed in accordance with and in discharge of all the obligations of the above mentioned contract.

"H. C. PARSONS.

"Dated December 22, 1871."

Exhibit No. 3, filed with defendant James L. Thornburg's answer, is in the words and figures following, to wit:

"*Know all men by these presents:* That I, James L. Thornburg, of Cabell county, West Virginia, do hereby agree and bind myself to convey, by apt and proper deed, to the Chesapeake and Ohio railroad company the land which may be necessary for the construction, use and enjoyment, not to exceed one hundred feet, of a double track railroad through a certain tract of land owned by me, containing about one hundred acres, lying between the farm of William Jacobs on the west and J. L. and William L. Johnston on the east, and to release to the company all claim for damages, which I may sustain in consequence of the construction of said railroad within the said one hundred feet. The said company shall make and keep sufficient fencing and at least one wagon-road crossing, and give a free pass over the road from Charles-

ton to Sandy to me and my wife and children for life, and shall drain so as not to overflow any of my land. The deed is not to be made until the cars run from the Ohio river to Charleston.

" Witness my hand and seal this 12th day of January, 1870.

" JAMES L. THORNBURG.

" The within contract was rejected and returned to me by H. Chester Parsons, September 20, 1871.

" JAMES L. THORNBURG."

" JAMES L. THORNBURG AND WIFE TO H. C. PARSONS. —Deed eighty acres.

" This deed, made the 20th day of September, 1871, between James L. Thornburg and Virginia F., his wife, of the first part, and H. C. Parsons, of the second part, witnesseth :

" That whereas, the said Thornburg did, in the year 1870, give a contract to Albert Laidley to convey unto him or his assigns that portion of his farm lying north of the railroad upon the payment of a certain sum of money, and the said contract having been assigned by said Laidley to another party and finally assigned to the said H. C. Parsons. Now, therefore, in consideration of the premises, and of the sum of ten thousand dollars, ($10,000.00) the said Thornburg and wife do grant unto the said Parsons that certain piece of land bounded as follows, to wit: Beginning at a stake on the Ohio river, from which a sugar tree now stands, south 2 east 1 pole, and another sugar tree is north 75 east 1 pole ; thence up the river north 76 east 56 poles to a stake, from which a white oak stands, north 1 pole where a dogwood stands south 85 east 1 pole ; thence south 16 east to a stake standing at right angle distance of 50 feet from the centre line of the present location of the Chesapeake and Ohio railroad on the north side ; thence along the north side of said railroad line and parallel with it a distance of 50 feet from it 56 poles to a stake ; thence north 16 west to the beginning, con-

taining eighty acres, be the same, more or less; and <span>1880<br>Special Term.</span>
the said parties of the first part covenant that they will ——————
warrant generally the property hereby conveyed. <span>Parsons<br>v.<br>Thornburg *et al.*</span>

" Witness the following signatures and seals:

" James L. Thornburg. [Seal.]

" Virginia F. Thornburg. [Seal.]

" State of West Virginia,

" *County of Cabell, to wit :*

" I, John H. Oley, a notary public for the county aforesaid, do certify that James L. Thornburg, whose name is signed to the writing above, bearing date on the twentieth (20) day of September, 1871, has this day acknowledged the same before me in my said county.

" Given under my hand this the twentieth (20) day of September, 1871.

" John H. Oley,<br>
*Notary Public.*"

" State of West Virginia,

" *County of Cabell, to wit :*

" I, John H. Oley, a notary public for the county aforesaid, do certify that Virginia F. Thornburg, the wife of James L. Thornburg, whose names are signed to the writing above bearing date on the twentieth (20) day of September, personally appeared before me in the county aforesaid, and being examined by me privily and apart from her husband, and having the said writing fully explained to her, she, the said Virginia F. Thornburg, acknowledged the said writing to be her act, and declared that she had willingly executed the same and does not wish to retract it.

" Given under my hand this the twentieth (20) day of September, 1871.

" John H. Oley,<br>
*Notary Public.*"

" Recorder's Office, Cabell Co., W. Va., }
November 23, 1871. }

" This deed from James L. Thornburg and wife to H. C. Parsons, with U. S. revenue stamp thereon for $10.00,

was this day presented in said office, and together with the certificates thereon endorsed admitted to record.

"Teste :                          "Thos. J. Hayslip,
                                         " Recorder.

Exhibit No. 5, filed with the defendant Thornburg's answer, is in the words and figures follwing, to wit :

"December, 23, 1871.

"Jas. L. Thornburg, Esq. :

"My Dear Sir :—I find on my return from Charleston that my wife had not the original copy of the title-bond, but the assignment of Mr. Huntington, and the copy of the original. You objected to this copy in preparing the description of deed, and I supposed would prefer the original now. There seems to be a rule in our New York office that whenever original papers are filed in the office they must remain there. I remember they declined to surrender the title-bond of Mr. Hagans, or some other of the men above here, for the same reason, but gave a receipt acknowledging full discharge and satisfaction. I can — the copy certified by Mr. Huntington, or if I demanded it under the assignment they must of course give me the paper as they have no legal right to it. Please preserve the assignment and advise me if I shall demand the original.

" Yours very truly,

" H. Chester Parsons."

Exhibit No. 6 is in the words and figures following, to wit :

"Huntington, W. Va., Dec. 30th, 1871.
" Jas. L. Thornburg, Esq. :

" Dear Sir—After you left I thought of what you said about not giving up the deed if you had not thought the original was here, and it occurred to me that you might mean that I intentionally deceived you. Can you mean or think this? I certainly am as much aggrieved at the course of Mr. Tracy and astonished as you are. After I had made the payment and taken the assignment, I felt that the contract was as much under my control as

any other property I might have left with him for an hour. I have written as I suggested, and am sure the contract must come in a few days, but if you feel that I have done you wrong in this matter, I will, on demand, make you an absolute re-conveyance of all the title you have vested in me at my own entire expense, leaving myself only my rights under the contract. I feel as you do, that it is no business of Mr. Tracy to judge and say that the contract is of no account to you. I shall persist in my demand for the paper, but in the meantime I don't want you to misunderstand me; and will do what I have proposed or enter into a bond to save you harmless from the contract.

> "Yours very respectfully,
>
> "H. CHESTER PARSONS."

Exhibit No. 7 filed with the answer of defendant, James L. Thornburg, is as follows:

> "THE CHESAPEAKE & OHIO RAILROAD CO.,
> 54 WILLIAM STREET, NEW YORK,
> January 6, 1872.

"H. Chester Parsons, Esq., Huntington, West Va.:

"DEAR SIR—I enclose herewith Thornburg's original contract. It should have been sent sooner, but in the press of business it has escaped attention, for which I must request you and Mr. Thornburg to excuse me.

> "Very truly yours,
>
> "JAMES J. TRACY, Treasurer."

The defendant, J. B. Brooks, filed his answer to the bill, in which he states that on the 15th day of July, 1873, the plaintiff and his wife conveyed to him in consideration of $300.00 in hand paid, a lot of land near the city of Huntington, in what is known as the village of St. Cloud, containing one acre, a deed for which was duly acknowledged and admitted to record on the 6th day of April, 1877, and recorded in deed book "D," page 583, in the county court clerk's office of said county, to which reference is made for a full description; and he avers, that he has paid the plaintiff the full purchase-

money, and that when he purchased it he understood from the plaintiff he was to have a clear title for the lot; that there is enough of land to pay the said Thornburg all that plaintiff owes him on the purchase-money on the tract of land in the bill mentioned, without resorting to a sale of the lots sold in said St. Cloud by plaintiff to the different defendants in this suit; that he is advised, that a court of equity will compel the said Thornburg to first sell the land still unsold by plaintiff, before the said lots sold by him will be subjected to the payment of Thornburg's deed of trust held by him on the entire tract; that he knows nothing of his own knowledge of the alleged contract between plaintiff and said Thornburg about releasing the lien on the said lots as fast as sold, as alleged in the bill, but only from general rumor that such was the fact; but if there was such understanding between them he insists that said Thornburg is forever barred and estopped from enforcing his said lien on said lots, and he therefore prays he be compelled to answer on oath, whether there was such an agreement and contract; and if there was, that then the said Thornburg be forever estopped from asserting any lien on said lots sold to the defendant; and that if there was not such understanding or contract, that the said Thornburg be compelled to first sell the unsold lots before resorting to a sale of the sold lots to enforce his said lien for the purchase-money for the entire tract; and he prays for general relief.

The defendant, Harp, also filed his answer, in which he alleges, that on the 26th day of December, 1875, the plaintiff and wife conveyed to him for valuable consideration a lot of land in said village of Saint Cloud, containing four thousand and fifty superficial feet, and the deed for which is recorded in deed book "D," pages 538, 539, and for fuller description reference is made to the deed. In other respects this answer is similar in its allegations and prayer to that of said Brooks, except he states that he has been in possession of said lot ever since said conveyance to him.

The defendant, Aaron Walker, filed his answer, in which he alleges, that on the 12th day of March, 1875, the plaintiff and his wife, conveyed to him in consideration of $526.00 two lots or parcels of land in said village of Saint Cloud, known as lots numbers nine and ten of block three; that he paid on the same in cash $186.00, and for the residue, $340.00, plaintiff reserved a lien, all of which appears by the deed by the plaintiff and wife to respondent. He also avers, that he has paid to plaintiff the whole of said purchase-money, for which the vendor's lien was retained, and that he is now entitled to a release of the said vendor's lien; and that he has had quiet possession of his lots ever since his said purchase. The other allegations and prayers in this answer are also substantially the same as those in the answer of said Brooks.

The defendant, Tanner, filed his answer, in which he alleges, that on the 10th day of February, 1875, the plaintiff and his wife conveyed to him in consideration of $500.00 four several parcels of land in said village of Saint Cloud and defined on the map of said town as lots numbers one, two, nineteen and twenty of block number three, which lots lie along Park street; which deed is recorded in deed-book "D" (new series) p. 338, in the clerk's office of Cabell county; that under said conveyance he took possession of said lots and has remained in quiet possession ever since, and paid the plaintiff all the purchase-money; that at the time he made his said purchase, it was expressly understood by him, that said James L. Thornburg had agreed with plaintiff, that as fast as plaintiff sold as much as one acre of the tract of land in the bill mentioned, said Thornburg would release his lien on the same upon the payment to him of $200.00 for every such acre sold by plaintiff; that when he purchased said lots and paid for them, he did so with the full understanding, that said Thornburg would release his lien upon the same, and he is informed and believes, that such was the contract between plaintiff and said Thorn-

burg. He also avers, that Thornburg as a surveyor laid off the said land into town-lots, streets and alleys, and was present when the said Parsons sold many of the said lots in said village to different purchasers, and was fully cognizant, that plaintiff sold the same with the express understanding, that said Thornburg would release his lien upon the same as fast as sold as aforesaid, and that he, Thornburg, acquiesced in the same, as respondent believes and is informed. He further alleges, that said agreement between plaintiff and said Thornburg was a matter of public notoriety in said village, known to all who purchased lots in said village, as he is informed and believes; that in pursuance of said contract the plaintiff tendered to the said Thornburg the aforesaid agreed sum of $200.00 for each and every acre sold by him in said village and requested said Thornburg to release his lien on the same, which he refused to do, in violation of his said contract as he is informed and believes. And he submits whether the said Thornburg is not forever *estopped* from enforcing his lien on said lots, and whether his lien on the same is not now released; that in any event, as there is sufficient land secured by the deed of trust to pay all plaintiff owes to said Thornburg on his said purchase, without resorting to a sale of any of the lots sold by said Parsons in said village, respondent prays that said Thornburg be compelled to release his said pretended lien on each and every one of said lots sold to the defendants in this suit, and if necessary, the balance of the said land, exclusive of said lots, be sold to satisfy the amount due on said Thornburg's trust-deed, and he prays for general relief in the premises.

The defendant, Cassandra. Phillips, filed her answer in which she alleges that on the 3d day of April, 1875, the plaintiff and his wife conveyed to her in consideration of $860.00, two acres of land in said village of Saint Cloud, the deed for which is recorded in the county clerk's office of said county in deed book "D," pages 405 and 406, to which reference is made for full

description; that under said conveyance she took possession of said lot of land and has ever since remained in the quiet possession thereof; that she paid to the said Parsons all the purchase-money therefor except $140.00, for which a vendor's lien was retained in said deed. The other allegations and prayers of this answer are substantially the same as those contained in the answer of said Tanner.

The defendant, Ermina E. Flickinger, filed her answer, in which she says, that it is true, that the plaintiff laid off in lots, streets and alleys a portion of the land in the bill mentioned, and that he has sold a number of said lots, and that valuable improvements have been made on some of them; that she purchased from plaintiff lot number seventeen in block number seven, in said town of Saint Cloud and that the same is a part of said tract of land; that she paid on said lot $100.00, and still owes on the purchase-money of the same $150.00; that plaintiff and his wife conveyed the lot to her by deed dated April 3, 1875, in which a vendor's lien is reserved for the unpaid purchase-money, which appears by said deed; that she contracted also to buy the lot immediately back of the one conveyed to her, being lot number ten of said block number seven, and faces Third avenue, but that she has paid no part of the purchase-money on said last named lot, but that plaintiff holds notes executed for the purchase-money of said lot, one for $100.00 and the other for $150.00; the said $100.00 note signed by John Flickinger, and endorsed by D. G. Flickinger; the $150.00 note signed by John H. Flickinger and made payable to plaintiff. She avers, that at the time of her said purchase she was assured by the plaintiff, that his title to said lots was perfect, and she presuming it so has made valuable improvements on said lot number seventeen, by erecting a new two-story frame-house thereon, dug a well and made improvements on said lot well worth $1,200.00; that she presumes James L. Thornburg has a deed of trust on the land mentioned in said deed, but

that she knew nothing of it at the time of her purchase. She further says, that if plaintiff and Thornburg had an agreement, that as fast as one acre should be sold, plaintiff was to pay to Thornburg $200.00 and Thornburg was then to release the same, then she prays the court to compel the parties to carry out their said agreement, and as she owes $150.00 of the purchase-money on lot number seventeen, that the court decide to whom it shall be paid, and when paid, that both plaintiff and Thornburg be required to release their respective liens on said lot number seventeen as the same does not contain but nine thousand three hundred superficial feet; that as she has received no title-bond for said lot number ten in block number seven she prays the court will require and compel plaintiff to deliver up said notes executed for the purchase-money of said lot number ten, as it would be a great wrong and fraud to allow the same to be collected and then perhaps sell the lot to pay Thornburg's said lien; that she insists, that a court of equity will compel the sale of that portion of the land yet held and owned by said Parsons, before it will permit said Thornburg to sell any of the lots sold by plaintiff. She prays, that her rights be protected in this suit and for general relief.

The defendants, Robert T. Harvey and Thomas H. Harvey, also filed their answer, in which they say, that it is true the plaintiff since the purchase of the land mentioned in the bill from James L. Thornburg has laid the same, or at least a portion thereof, off into town-lots as the town of "St. Cloud;" and they believe it is also true, that a good many permanent improvements have been made on said land since the conveyance from said Thornburg; they aver, that in May, 1873, the plaintiff and his wife sold to one T. C. Morrallee one acre of said land lying between Third avenue and Washington avenue, which acre now embraces lots number eight and nine and eighteen and nineteen in block number seven of said town; that plaintiff and his wife executed said title-bond to the said Morrallee for said acre of land and

put him in possession thereof; that after said purchase the said Morrallee sold the said land to Sperry, Hale & Co., and assigned said bond to them and put them in possession of said lot, and said title-bond has been lost or the same would be filed with the answer; that they on the 6th day of January, 1874, bought said acre of land from the said Sperry, Hale & Co., and paid them in full therefor, and took from the said Sperry, Hale & Co., their title-bond for said acre, and were put in possession, and their title-bond aforesaid was duly admitted to record in the county court clerk's office; that said plaintiff was paid his purchase-money for said acre of land long before this suit was instituted, and that his vendees had improved said land by fencing the same; that they being entitled to a deed for said land by reason of their said purchase applied to the plaintiff for one, and he and his wife by their deed dated November 6, 1875, conveyed said acre of land to the respondents; they further say, that their said acre of land was among the first acres sold by the plaintiff, it having been sold in the month of May, 1873, and should be among the last sold, if it should be decreed to be sold at all; that if the unsold part of said tract be insufficient to pay the balance due defendant, James L. Thornburg, that then the lots sold by the plaintiff be sold in the reverse order in which they were sold by plaintiff, that is, the last lot sold by the plaintiff be sold first, and so on until enough be sold to pay off and satisfy the debt due to the said Thornburg, or until the whole of the original land be exhausted. The other allegations as well as the prayer of this answer are substantially the same as those in the other answers before referred to, except that of James L. Thornburg.

The answers of each and all the said purchasers from the plaintiff seem to have been filed a short time previous to the time, when said James L. Thornburg filed his answer. After all the answers hereinbefore referred to had been filed, and on the 20th day of December, 1875, the

defendant, W. P. Holderley and W. H. Harvey filed their answer, in which they say, it is true, that the plaintiff since the purchase of the land in the bill mentioned from James L. Thornburg has had the same, or at least a portion thereof, laid off in town-lots in the said town of Saint Cloud, and that they believe, it is also true, that a good many of said lots have been sold, and that many permanent improvements have been made on said land since the conveyance from said Thornburg; and they aver, that the plaintiff sold one acre of said land in the spring of 1873, to Sperry, Hale & Co., and that said acre is situated between Third avenue and Washington avenue, and on the east side of Park street; that they bought of said Sperry, Hale & Co. in the summer or fall of 1873 the said acre of land; that said Sperry, Hale & Co., not having acquired the legal title at the date of their purchase from them directed the plaintiff to make the deed direct to respondents, which was accordingly done on the 12th day of November, 1875, as appears by the deed; that their acre was among the first sold by the plaintiff, it having been sold in the spring of 1873. The other allegations as well as the prayers of this answer are in effect and substance substantially the same as those in the answers of the other defendants, who are purchasers from plaintiff.

There are some other papers copied in the record, which the clerk of the circuit court says were copied in the record in this case at the request of the counsel of the plaintiff, which appear in the printed record from page 61 to page 70 inclusive, which it is deemed unnecessary at this point to further refer to, as they will be noticed in the opinion. The plaintiff filed no list or schedule of the payments, which he claims to have made to said James L. Thornburg, and does not supply such list in his bill, and he failed to take or file any depositions in the cause proving or tending to prove material allegations of his bill.

On the 16th day of September, 1876, a decree was entered in the cause as follows:

"The defendants, James L. Thornburg, John C. Tauner, R. G. Harvey, William N. Harp, Ermina E. Flickinger, W. P. Holderly, W. H. Harvey, Aaron Walker, Cassandra Phillips and J. B. Brooks, having filed their answers in this case, to which answers the plaintiff replies generally, and the defendant, James L. Thornburg, having given notice of a motion to dissolve the injunction awarded in this cause on the 17th day of July, 1875, this cause came on to be heard on this day upon the motion of the defendant, James L. Thornburg, to dissolve the said injunction, and upon the bill and exhibits, the answers and exhibits, and the replications thereto, and was argued by counsel. Upon consideration of all which the court is of opinion to grant the said motion of the said defendant, James L. Thornburg. It is therefore, adjudged, ordered and decreed, that the said injunction be, and the same is in all things dissolved. But the plaintiff and the defendants, except the defendants Thomas and James L. Thornburg, desiring this cause to be retained on the docket of this court, in order that the real estate mentioned in the bill and exhibits and answers and exhibits may be sold under the direction and control of this court, and the defendants, James L. and Thomas Thornburg, consenting thereto, the same is so retained; and it appearing to the court, that since the execution of the note and deed of trust mentioned in the bill and answers, the plaintiff has sold and conveyed to the defendants other than the said James L. and Thomas Thornburg certain parts and parcels of the land embraced in said deed of trust, but inasmuch as said deed of trust was at the time of said sales and conveyances, and each of them, duly recorded in the proper office in this county, the said defendants were and are in law purchasers with notice of the said deed of trust and of the debt thereby secured to the said defendant, James L. Thornburg, for the purchase-money of said land, and,

therefore, that all the right, title and interest of the said purchasers of said parts and parcels of said lands are subject to the lien of the said defendant, James L. Thornburg, thereon for the purchase-money thereof secured by said deed of trust, it is, therefore, adjudged, ordered and decreed that the said defendant, Thomas Thornburg, the trustee in said deed of trust, do, whenever requested by the said defendant, James L. Thornburg, to do so, proceed to sell so much of the said real estate as may be necessary to pay the said James L. Thornburg the amount of principal and interest due him upon said note and deed of trust at the date of said sale, together with the costs and expenses attending the said sale; and by request of the plaintiff and of the defendants other than the said James L. and Thomas Thornburg, and with the assent of the said James L. Thornburg, it is further adjudged, ordered and decreed that the said trustee do sell the real estate as follows:

"1st. All that portion thereof which has not heretofore been sold by the said plaintiff; and the said trustee before making such sale shall divide the said land into lots of reasonable size, and shall sell the same in parcels, or as a whole, whichever will produce the greatest amount of money.

"2d. He shall, in case the portion of said real estate before mentioned does not produce a sum sufficient to pay the said debt, interest and expenses, then proceed and sell each lot and parcel of said real estate so sold by the said plaintiff as aforesaid, commencing with that lot or parcel thereof last sold and conveyed, either by deed or title-bond, by the said plaintiff, and proceeding with the sale of each lot or parcel, the date of which sale and conveyance is next preceding the one last sold until the whole of the said debt, interest and expenses are fully paid off and discharged; and that said trustee report his proceedings under this decree to this court; and this cause is continued for the coming in of said report; and in case any dispute shall arise as to any credits

claimed by the said plaintiff which are not allowed by the defendant, James L. Thornburg, the court reserves the right to pass upon and settle the question as to the validity of such credits upon the coming in of the report of said trustee.

From and to this decree the plaintiff, upon his petition with assignment of error therein obtained an appeal and *supersedeas* to this Court.

*S. A. Miller*, for appellant, cited the following authorities :

11 W. Va. 146 ; 8 W. Va. 210 ; 10 W. Va. 206.

*James H. Ferguson*, for appellees, cited the following authorities :

1 H. & M. 7, 8 ; 3 W. Va. 1, 4; 5 W. Va. 377, 378 ; 6 W. Va. 101, 107, 108 ; 11 W. Va. 464 ; *Id.* 694.

HAYMOND, JUDGE, delivered the opinion of the Court :

This case in some of its features is not unlike the case of *Arbuckle* v. *McClanahan et al.*, 6 W. Va. 101. In that case the plaintiff .in his bill alleged, that he had made payments upon and was entitled to reductions or offsets against the deed of trust debt, but he neither specified the payments of offsets in his bill nor filed with his bill as an exhibit and specification a list of such payments or offsets; and he failed to file any evidence in the cause proving or tending to prove his claim of payments or offsets. But the defendant did in his answer admit certain payments which were endorsed on the bond given for the debt and filed with his answer a copy of the bond with the credits endorsed. In that case it did not appear, that there was in fact any dispute as to the amount the debtor was entitled to as payments or offsets, before the land was advertised for sale by the trustee, or the bill was filed, or that the plaintiff had ever claimed to the trustee or creditor, that he claimed or was entitled

to any credits not admitted and endorsed on the said bond. Under these circumstances the court dissolved the injunction and the decree of dissolution was affirmed by this Court.

In the case at bar the plaintiff failed to specify or state in his bill the payments, offsets or deductions, to which he claims in his bill he is entitled, with the exception of the value of the strip of about two acres of land, for which he claims he is entitled to a credit or deduction of some $500.00. It is true, the plaintiff states the aggregate amount, for which he claims a credit on the deed of trust debt, but it is manifest that this aggregate amount so claimed is composed of various items, but what they are is not stated with the exception aforesaid.

The defendant, James L. Thornburg, in his answer denies, that the plaintiff is entitled to a credit on the debt for $1,797.50, the amount claimed in the bill; but he admits, that he has paid in all on the debt $1,515.55, of which sum $1,160.00 was paid for interest up to the 1st day of September, 1873, which is credited on the note given for the debt in the handwriting of the plaintiff, which is composed of a large number of items there aggregated and amounted to the sum of $1,160.00; and that since the date of said credit the plaintiff has paid him as follows, to wit: On the 22d day of September, 1874, in cash $200.00; nails, sixty-five pounds; gray lime, twenty barrels; white lime, six barrels; plaster Paris, one barrel, amounting in all to $40.55; that these items were gotten in the month of September, about the time of the cash-payment, but he cannot state the exact date, and therefore he is willing to allow them all as of the same date of the cash-payment, also check of plaintiff or of some one else endorsed by him for $50.00, received October 17, 1874, $50.00 either in money or check, does not remember which, and $15.00 in money or check some time in the fall of 1874, he cannot state exactly when— making in all $355.55. And he avers this is all that has in any way been paid on said note now due, which does

not pay the interest by several hundred dollars ; but he does not say that the last named items have been credited on the note, and he has failed to file the note or a copy of it with his answer either with or without credits endorsed. The plaintiff failed to file any evidence proving or tending to prove that he was entitled to any credits or offsets against said defendant for any cause ; and the only evidence of his right to any credits are the admissions contained in the answer of said James L. Thornburg.

This case in some of its aspects, though not all, is like the case of *Walker* v. *Summers et al.,* 9 W. Va. 533. In the last named case the plaintiff alleged, that he had sold nineteen of the lots, but failed to state to whom the sales were made, whether he had received payment in whole or part, and in fact made no allegations in reference thereto, except he did state the average price at which he sold. He failed also to make the alleged purchasers parties to the bill, and to allege that the trustee was about to or would sell these lots, and in fact it was fairly inferrible from the allegations of the bill, that the plaintiff did not expect or anticipate a sale of these lots. The court said : "Upon a proper case made by proper parties by the pleadings and evidence, the court might properly direct, that the nineteen lots aforesaid should not be sold under said deed of trust, until the residue of the land was first sold." 9 W. Va. 547.

In the last named case the court dissolved the injunction granted in the cause, and authorized the trustee by a sale of the trust-property, or so much thereof as should be necessary, to pay the costs of sale and the sum of $6,879.65, the amount due thereon, on the 8th day of July, 1874 ; and the court then proceeded to decree further as stated in the decree. See pages 542, 543. There was no consent to this decree by the *cestui que trust,* or the trustee. But the plaintiff in the case appealed.

In the case at bar, if the decree had stopped with a dissolution of the injunction simply, then, I think from

the pleadings and circumstances appearing in this case, the decree would have been erroneous. The case, though like the two cases, to which I have referred, in some respects, is not like either of them in other material aspects, which is quite manifest upon examination. But the decree proceeds further than to dissolve the injunction. Immediately after the section of the decree dissolving the injunction and in the immediately succeeding part of the decree it appears substantially, that by the consent of the plaintiff and the defendants the court retained the case on its docket, in order that the real estate in question in the deed of trust mentioned should be sold under the direction and control of the court, and the court then proceeds to ascertain in a general way the extent of the plaintiff's lien for his debt secured by the deed of trust and then decrees (without ascertaining the amount due upon the debt, or giving a day for payment) that the trustee " do so proceed to sell so much of the said real estate, as may be necessary to pay the said James L. Thornburg the amount of principal and interest due him upon said note and deed of trust at the date of said sale, together with the costs and expenses attending the said sale ; and by the request of the plaintiff and of the defendants, other than the said James L. and Thomas Thornburg, and with the assent of the said James L. Thornburg, it was further adjudged, ordered and decreed, that the said trustee do sell the real estate as follows :    1st. All that portion thereof which has not heretofore been sold by the said plaintiff ; and the said trustee before making such sale shall divide said land into lots of reasonable size, and shall sell the same in parcels, or as a whole, whichever will produce the greatest amount of money.    2d. He shall, in case the portion of said real estate before mentioned does not produce a sum sufficient to pay the said debt, interest and expenses, then proceed and sell each lot and parcel of said real estate so sold by the plaintiff as aforesaid, commencing with that lot or parcel thereof last sold and con-

veyed, either by deed or title-bond, by the said plaintiff, and proceeding with the sale of each lot or parcel the date of sale and conveyance of which is next preceding the one last sold, until the whole of the said debt, interest and expenses are fully paid off and discharged; and that said trustee report his proceedings under this decree to this court; and this cause is continued for the coming in of said report."

It seems to me, on close examination of the whole of the parts of the decree, to which I have referred, that the court did in effect continue the injunction to a sale by the trustee under the deed of trust except in the manner and upon the terms specified in the decree, and that the plaintiff as well as the other defendants to the decree consented to those parts of the decree, and that in fact the plaintiff and the other defendants requested and procured the court with the assent of the *cestui qui trust* to make the decree of sale, as the court did make it. 1st. The court at the "desire" of the plaintiff and the defendants, other than the said Thornburgs, and with their assent retained the cause on its docket, that the property might be sold under the direction and control of the court. 2d. The court proceeded to carry out the said desire and assents by ascertaining in general terms the extent of the lien and directing the trustee to sell. 3d. The court by the request of the plaintiff and the defendants, other than the said Thornburgs, and with the assent of the *cestui que trust*, James L. Thornburg, decreed, that the trustee should sell the property in the manner stated above and report his proceedings to the court. This request and assent of the material parties in interest was made to the decree directing the sale of the property, &c., without the court having ascertained in the decree the amount of the deed of trust lien or giving a day of payment; and such parties must be considered as having waived the same.

While the general rule, as laid down by this court, requires, that where the court directs the sale of real prop-

erty it shall first ascertain the amount of the lien-debts and their respective priorities and give a day for payment in the decree, still this rule is not so fundamental in its requirments as to prevent the parties to the cause, who may be interested in its enforcement, from dispensing therewith or waiving a compliance therewith by the court by their consent. In many cases it requires no inconsiderable delay to ascertain lien-debts, their amounts and priorities and the interest of all concerned require that there should be a sale of the property prior to that being done by the court, and it would be strange, indeed, if the court could not in such cases with the consent of the parties in interest direct such sale before ascertaining the amount of the lien-debts, and without giving in the decree a day of payment.

The effect of said decree as assented to is, that the trustee may sell as directed after giving thirty days notice of the time and place, &c., of sale advertised and published as in the deed of trust specified, and also the sale would be for cash as specified in the deed of trust. It is objected, that the sale should not have been for cash, but upon the usual terms directed by courts of chancery.

The 1st section of the 132d chapter of the Code of 1868 of this State provides, that a court in a suit properly brought therein may make a decree or order for the sale of property in any part of the State, and may direct the sale to be for cash, or on such credit and terms as it may deem best. In this case the deed of trust provides, that the sale shall be for cash. The appellant executed the deed of trust and agreed to its stipulations and provisions, and although under circumstances it would perhaps be competent for a court of equity to direct a sale of trust-property upon its own terms different from those specified in the deed, still, I apprehend, when the court below directs a sale according to the terms of the deed of trust as to the time of payment, the Appellate Court would not reverse the decree for that cause, unless the last named court was clearly satisfied of error in this re-

spect. But if the Appellate Court would under some circumstances reverse the decree complained of for error in this respect, still it seems to me, that the parties in interest may dispense with or consent to a different course, if competent to act. They may waive any such change in the terms of sale from that specified in the deed of trust by a consent decree before the court below ;—and that consent need not be expressly stated in the decree, but may be inferred from the face of the consent decree itself.

Without intimating what would be my opinion if the decree had been entered under some other circumstances, I am of opinion, that in this case it must be considered, that the parties in interest consented to said decree, as it was made and reads, and that by such consent they should be held to have waived any cause of complaint here for this cause. The last clause of said decree is as follows: "And in case any dispute shall arise as to any credits claimed by the plaintiff which are not allowed by the defendant, James L. Thornburg, the court reserves the right to pass upon and settle the validity of such credits upon the coming in of the report of said trustee." If this decree was an ordinary decree of sale of land and otherwise correct, this clause in the decree would be erroneous and might affect the whole decree, unless entered by consent, but as in this case the amount of the trust-lien is not ascertained in the consent part of the decree, but was intended by the parties and the court to be left open to some extent, I do not see that the plaintiff can be prejudiced thereby under the circumstances, but in fact the court incorporated this clause in the decree for the benefit of the plaintiff and for his protection, and the decree should not be reversed for this cause.

There appears on pages 61, 62, 63 and 64 of the printed record, what appears to be a special replication of the plaintiff to the answer of defendant, James L. Thornburg, and also at page 65 a paper designated as exhibit "A," which is referred to in said special replication as

exhibit "A," and also at pages 68 and 69 of printed record a paper designated as "amended bill." There is no evidence whatever, which can be considered by this Court, that these papers or any of them were filed before said decree was made, and the cause does not appear to have been heard thereon. The clerk of the court below at page 60 of printed record says, that he has copied by request of plaintiff's counsel the replication of plaintiff, which appears among the papers in this cause, upon which replication there appears an endorsement made with a lead pencil, in the following words: "1875, Dec. 22d, filed;" and then he gives the replication, which appears to be a special one alleging among other things affirmative matters, and said paper designated as exhibit "A" is copied as a part of said replication and is endorsed in pencil, says said clerk, "1875, Dec. 22, filed." The said paper designated as "amended bill" is endorsed in pencil-writing, says said clerk, "1875, Dec. 22, filed." But there is nothing to show that these endorsements are in the hand-writing of the clerk or his deputy or of the judge; and there is no order or entry of record showing or tending to show, that either of them were ever filed; and, as before stated, the decree does not show that the cause was heard upon said special replication or amended bill; but the decree does show, that the plaintiff filed a general replication to said answer. These papers under these circumstances cannot be regarded by this Court as a part of the record for manifest reasons. See *Sims* v. *Bank of Charleston*, 8 W. Va. 274 And if they were, under the view taken of the decree complained of above expressed they could make no difference in my conclusion as to said decree. As to consent decrees see *Manion* v. *Fahy*, 11 W. Va. 482, 493, 499.

For the foregoing reasons it seems to me, there is no error in the said decree of the circuit court of the county of Cabell, rendered in this cause on the 16th day of September, 1876, for which it should be reversed, and that the same must therefore be affirmed; and the

appellant H. Chester Parsons must pay to the appellee James L. Thornburg $30.00 damages and his costs about his defence of his appeal and *supersedeas* in this cause expended.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.